**Patricia A. HALL, Respondent,**

v.

**Robert C. HALL, Appellant.**

**No. CO–86–2098.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Aug. 19, 1987.

FOLEY, WOZNIAK, SEDGWICK, LANSING, HUSPENI, FORSBERG, LESLIE, NIERENGARTEN, RANDALL, CRIPPEN, STONE,* and MULALLY,* JJ.

## OPINION

LANSING, Judge.

Robert Hall appeals from (1) a referee's recommended order for protection, adopted by a district court judge, and (2) a district court order affirming the family court order. Respondent Patricia Hall did not file a brief and the case proceeded under Minn. R.Civ.App.P. 142.03. We affirm.

## FACTS

On October 27, 1981, Patricia Hall petitioned for an order of protection from domestic abuse. In a sworn statement she said that her husband, Robert Hall, held a gun to her head and threatened to kill her; pushed, kicked, shoved and punched her on numerous occasions; and threatened her by asking whether she would rather be "dead or beat up." As a result of the petition, Robert Hall participated in a domestic abuse program and, at Patricia Hall's request, the protective order was removed in June 1982.

In September 1984 Patricia Hall petitioned for dissolution of the couple's six-year marriage. The marriage was dissolved by partial stipulation and entry of a family court order dated November 18, 1986. The final judgment and decree was entered on December 10, 1986. The trial court provided for joint legal custody of the couple's two children, ages four and two, with physical custody in Patricia Hall subject to Robert Hall's liberal visitation rights. As part of the dissolution proceedings, Ramsey County Family Court Services conducted a visitation investigation. Dennis Smith, a Family Court Officer, expressed concern about Robert Hall's continued chemical usage and aggressive acting-out behavior. Smith recommended that Family Court Services continue to super-

Patricia A. Hall, pro se.

D. Patrick McCullough, McCullough, Dyrud & Smith, St. Paul, for appellant.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER,

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

vise visitation and that Robert Hall's visitation be conditioned on abstention from alcohol and drug usage before or during visitation and refraining from aggressive acting-out behavior at times of pick-up and return of the children.

Before entry of the final judgment and decree, Patricia Hall petitioned for a second domestic abuse protection order. In a sworn statement dated October 2, 1986, she listed the following incidents which she stated caused her to fear further acts of domestic abuse:

9/22/86

The Resp [Robert Hall] was arguing with the Pet [Patricia Hall] about a custody issue and threatened "you better stop f___ing with me; if you don't stop f___ing with me you'll end up in a box." The Resp was verbally abusive, swearing and yelling and calling Pat filthy names. The Resp said "I'm going to be the son-of-a-bitch that buries your ass."

9/2/86

Again about the custody issue the Resp told the Pet "If you're going to f___ around you're going to get it."

The Resp tries to scare the Pet about the custody issue by verbally abusing her and threatening to "hunt her down." The Resp is a hunter and has a gun.

On October 2, 1986, the trial court issued an order to show cause and an ex parte temporary order for protection under the Domestic Abuse Act, Minn.Stat. § 518B.01 et seq. (1984). On October 16, 1986, a referee held a hearing on the petition. Neither Robert nor Patricia Hall was represented by an attorney. Robert Hall initially denied having threatened Patricia Hall. However, in response to the court's question, "You weren't verbally abusive to her?", he admitted, "I may have. I did swear at her. I called her an asshole. Thought she was being a real bag." The court, observing his demeanor, stated on the record, "I can see how you could threaten by the sort of way you talk—fast and low." The court ordered Hall to become involved in the Wilder Foundation Domestic Violence Program.

The court also issued an order for protection dated October 16, 1986, signed by the referee and approved by a district court judge. The order prohibited Robert Hall from committing acts of domestic abuse against Patricia Hall and the children, excluded him from appearing at her residence except in exercise of his visitation rights and provided that the visitation should be determined and supervised by the Department of Court Services.

Robert Hall moved for review under Minn.R.Civ.P. 53.05(2). Each of the parties submitted additional written evidence and written argument. The trial court affirmed on November 20, 1986.

## ISSUE

Does the evidence support issuance of the protection order?

## ANALYSIS

The Domestic Abuse Act provides for the issuance of orders for protection in cases of domestic abuse, which is defined as

physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members * * *.

Minn.Stat. § 518B.01, subd. 2(a) (1984).

Robert Hall contends the court improperly issued an order for Patricia Hall's protection because the evidence was insufficient to support the order, he was not permitted an evidentiary hearing and the order conflicts with the judgment and decree in the marital dissolution action.

The court conducted the evidentiary hearing required by the statute on October 16, 1986. Although neither Robert nor Patricia Hall was represented by an attorney, each testified. Patricia Hall's petition and affidavit were also part of the file. Both submitted additional evidence in the Rule 53 review hearing. Robert Hall was not denied an evidentiary hearing.

■ The specific acts of domestic abuse were outlined in the affidavit and petition. These acts included past physical harm and present threats of harm. Robert Hall maintains that present threats do not con-

stitute domestic abuse because they are not "overt" acts, which he contends are required under *Kass v. Kass,* 355 N.W.2d 335, 337 (Minn.Ct.App.1984), and *Bjergum v. Bjergum,* 392 N.W.2d 604, 605–06 (Minn. Ct.App.1986).

*Kass* and *Bjergum* hold that evidence of domestic abuse which occurred years earlier does not, in itself, justify issuance of a protective order and that a petitioner is required to show present harm or present infliction of fear of harm. We do not read those cases or the statute to impose a requirement of an overt *physical* act to support the issuance of a protection order. A verbal threat, depending on the words and the circumstances, can also inflict "fear of imminent physical harm, bodily injury or assault."

■ The trial court's finding that Robert Hall committed acts of domestic abuse is supported by the record. The threats are sufficiently specific and violent to support Patricia Hall's claim of fear of physical harm. The threats are, of course, even more serious when considered in the context of the past physical abuse, which in two instances required medical treatment.

The statute permits the trial court discretion in issuing the protective order. Specific measures for relief are provided in addition to a general power to provide relief which is deemed necessary for protection of a family or household member. Minn. Stat. § 518B.01, subd. 6 (1984). The statute specifically permits restraining the abusing party from committing acts of domestic abuse, excluding the abusing party from the residence of the petitioner, ordering the abusing party to participate in treatment or counseling services, and restricting or establishing visitation, including the denial or supervision of visitation. Minn.Stat. § 518B.01, subd. 6(a)-(f).

■ Patricia Hall has not alleged acts of domestic abuse directed at the Halls' children. In imposing supervision of visitation by Court Services, the referee was evidently attempting to provide for continued visitation by Robert Hall without risking additional problems, particularly in the children's presence. The statute provides for this remedy; it is supported on the present record to the extent that it is implemented for the pick-up and return of the children for purposes of visitation.

■ Finally, we note that the statute specifically permits a petition for relief regardless of whether or not there is a pending lawsuit, complaint, petition or other action between the parties. Minn.Stat. § 518B.01, subd. 4(c) (1984). Although it may be economical to refer domestic abuse petitions to the same judge who is handling the marital dissolution, this is a scheduling decision that must be made in the counties where the cases arise. At oral argument counsel stated that they attempted to have the matter heard before the judge who had heard the dissolution matter, but the request was denied. We cannot penalize the litigants for following the structure imposed by the court.

## DECISION

The trial court's issuance of the protection order including supervised visitation for the purpose of picking up and returning the children is affirmed.

Affirmed.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would reverse the trial court for the following reasons:

1. When the trial court record fails to establish a present intention to do harm or inflict fear of harm, a protection order must be reversed. *Bjergum v. Bjergum,* 392 N.W.2d 604, 606 (Minn.Ct.App.1986); *see* Minn.Stat. § 518B.01, subds. 2(a), 4 (1984).

The record indicates appellant was physically abusive in 1981, before he attended a domestic abuse program. The existence of domestic abuse in the past, alone, however, does not support a protective order. *Bjergum,* 392 N.W.2d at 606. *See also Kass v. Kass,* 355 N.W.2d 335 (Minn.Ct.App.1984) (evidence of domestic abuse, the most recent incident of which had occurred four years previously, did not justify issuance of protective order where record was devoid

of evidence of appellant's present intention to do harm or inflict fear of harm).

Respondent alleges no incidents of physical harm to the children and none to herself since 1981. Further, I do not believe the record reflects, as alternatively required, any overt act indicating appellant's intention to place respondent in fear of imminent physical harm. *See Kass*, 355 N.W.2d at 337.

Although appellant concedes having used abusive language toward respondent and having threatened her with a custody battle, there was no testimony at the hearing of specific threats. Respondent did not testify she was actually fearful for her safety or that of the children. She does not contend appellant ever threatened the children. The record does not support a protective order or supervised visitation as opposed to the liberal visitation ordered by the trial court in the dissolution matter.

2. The dissolution court that heard this matter in August, and had informed the parties orally what would be contained in the decree, was not the same court that issued the protective order. It seems incongruous that the domestic abuse court could make a better decision regarding danger to respondent and the children than the trial court that had just heard the dissolution proceedings, complete with investigation, but had not yet issued the final judgment and decree.

At oral argument, appellant's counsel stated his client never moved for transfer of the domestic abuse matter to the dissolution trial court. He stated such a motion would have been fruitless given the method of court administration in Ramsey County. Appellant's counsel did write the dissolution court and requested it to dismiss the domestic abuse order. Counsel stated that request was denied because the court did not think it had such authority.

There is no evidence any domestic abuse occurred after the dissolution hearing. The domestic abuse complaint should have gone to the dissolution court which had

jurisdiction. *See* Minn.Stat. § 518B.01, subd. 3.

RANDALL, Judge (dissenting).

I join in the dissent of Chief Judge Popovich and in the dissent of Judge Crippen.

MULALLY, Judge * (dissenting).

I join in the dissent of Chief Judge Popovich.

FORSBERG, Judge (dissenting).

I join in the dissent of Chief Judge Popovich and in the dissent of Judge Crippen.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent and would reverse the trial court with regard to supervised visitation. There is no evidence in the record to support a finding of any potential danger to the children that may result if Mr. Hall is granted unsupervised visitation. The statute provides:

> If the court finds that the safety of the victim or the children will be jeopardized by unsupervised or unrestricted visitation the court shall condition or restrict visitation as to time, place, duration, or supervision, * * * as needed to guard the safety of the victim or the children.

Minn.Stat. § 518B.01, subd. 6(c) (1986). The majority concedes that Mrs. Hall has alleged no acts of domestic abuse directed at the Hall's children. There is nothing in the record or findings that indicate Hall has ever abused or threatened to abuse his children, and the court's findings do not indicate that Mrs. Hall's safety will be jeopardized by unsupervised visitation.

It is difficult under the best of circumstances for a non-custodial parent to maintain a positive supportive relationship with the children. To be forced to exercise visitation rights under supervision can only make establishing and maintaining a normal relationship more difficult.

It is obvious that the relationship between the Halls is acrimonious. Mr. Hall has admitted to threats and verbal abuse, but evidently all directed at Mrs. Hall. It

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

is unfair to punish Mr. Hall for these actions by restricting his relationship and activities with his children.

Because the statute requires that the victim or children be jeopardized by unsupervised visitation, and the record is devoid of any allegations or evidence that unsupervised visitation would endanger the children or Mrs. Hall, I would reverse the trial court on the matter of supervised visitation.

WOZNIAK, Judge (dissenting).

I join in the dissent of Judge Nierengarten.

CRIPPEN, Judge, dissenting.

I respectfully dissent. This is an important case which should prompt a vital judicial decision on the application of the Domestic Abuse Act. *See* Minn.Stat. § 518B.01 (1986). As applied in this case, the Act involves a process which is in glaring conflict with appellant's constitutionally protected interests in liberty and privacy. The trial court decision should be reversed. Because the constitutional questions in the case have state-wide impact, and are likely to recur unless resolved by a decision of the Minnesota Supreme Court, the case begs for review by that judicial body. *See* Minn.R.Civ.App.P. 117, subd. 2.

### 1. Domestic Abuse Act.

It should be noted at the outset that the Domestic Abuse Act is a vital part of Minnesota family law. These cases typically involve nearly helpless victims, including spouses and children who are severely hurt. The Act provides unique and critical remedies in cases where abuse occurs within a family. Thus, for example, although the juvenile law in Minnesota makes no provision for temporary removal of an abusive parent from the family home, that remedy exists under the Domestic Abuse Act. Similarly, the Act grants an abused spouse the remedies of police assistance and other emergency relief, benefits not fully available in a dissolution case, and covering cases where a spouse elects not to seek marriage dissolution or legal separation. I would urge nothing to diminish the availability of remedies under the Act. This opinion calls for due process in Domestic Abuse Act cases, but the prescription need not diminish the availability of appropriate relief under the Act. What is called for is nothing more than the simplest reform, the exercise of care in assessing the facts of the case, and the discipline of the trial court in preparing reasonably adequate written findings of fact.

It is among the evident purposes of the Domestic Abuse Act to provide for important relief in summary proceedings. The need for summary proceedings inevitably suggests that the proceedings can be handled through pre-printed forms which can be completed with check marks and a signature. This same tendency has been observed in juvenile delinquency cases, child protection cases, and involuntary commitment. Until recent years, there was also a tendency in dissolution cases to determine important issues with boiler plate findings and conclusions, or with no findings at all. The tendency to determine cases with forms may be laudatory in terms of the goal for judicial efficiency, but the aim for efficiency can never rightfully dominate the aim for justice and fair play.

It is noted later in this opinion that the courts have immense powers under the Domestic Abuse Act. This is also true in other judicial proceedings that deal with personal and family welfare. What the courts do in these cases has immediate and long-standing effects in matters which are of the deepest importance to the individuals who are involved in the cases. When mistakes are made, and when fair play is not demonstrated to everyone involved in the proceedings, immense damage is often done. It is because of the great powers of the courts in these cases that due process is vital. No matter how good is the will of those who try to resolve personal and family problems, and no matter how tragic are the consequences of failing to act, we should abandon the delusion that there are not equally painful consequences in mistaken, or careless or arbitrary legal dealings on personal and family welfare issues.

### 2. Trial court proceedings.

In her petition for relief, respondent alleged the occurrence of serious threatening remarks by appellant on two occasions in September 1986. Proper notice was given for a hearing to be conducted on October 16, 1986, and both parties appeared before the trial court referee on that date.

At the conclusion of the hearing, the referee and a judge signed a pre-printed order for protection. The form includes this printed provision: "THE COURT FINDS: THAT THERE HAS BEEN AN ACT[S] OF DOMESTIC ABUSE." The printed form makes no provision for other findings.

The record does not include sufficient evidence to justify the trial court's conclusory finding. Respondent was not asked to describe the evidence cited in her petition for relief. Moreover, she was not even asked to repeat the allegations in the petition nor to affirm that they were true. Appellant repeatedly denied that the allegations were true. A single admission by appellant did not indicate an act of abuse. It is evident that the trial court made its finding solely by sizing up the manner of appellant's talking in the court room. This summary of the fact finding process is better appreciated if it is detailed.

### (a) Petitioner's allegations.

Respondent said nothing in the hearing regarding the occurrences contained in her petition for relief. The record includes this single relevant item:

THE COURT: What would you like to say, if anything, Mrs. Hall. You don't have to. I have read what you said. Is there anything you'de like to add. We don't want to start an argument.

The trial court referee did not stop to permit respondent's answer to its questions. Without interruption, the referee asked respondent about the relief she wanted, and the respondent answered solely on the subject of relief she sought.

### (b) Appellant's responses.

Early in the hearing, this exchange led to appellant's response:

THE COURT: Did you get these papers, Bob?

MR. HALL: Yes, I did, your Honor.

THE COURT: Did you have a chance to read them over?

MR. HALL: You bet.

THE COURT: Do you have anything to say?

MR. HALL: I do.

Appellant then spoke more than a dozen sentences which described the difficulties of the family in recent years. Evidently referring to the allegations in the petition, appellant testified they were "fictitious" and "a smear tactic to make it look like I'm an unfit father." He repeated, "I deny it."

A minute later, this exchange occurred:

THE COURT: We can handle that now [referring to appellant's concerns about visitation rights]. What concerns me, have you done something to threaten your former wife?

MR. HALL: No, other than the fact I'm going to court for custody.

THE COURT: Did these things happen?

MR. HALL: No, your Honor.

There follows this exchange in the record, the single admission of appellant:

THE COURT: You weren't verbally abusive to her?

MR. HALL: I may have. I did swear at her. [Mr. Hall proceeded to indicate the name calling he admitted.]

### (c) The referee's response.

The record includes only a single observation of the trial court referee as to his view of the facts. Addressing Mr. Hall, the court observed:

[I]f you're talking to me the way you have been I can imagine what your talking to her is like. You don't threaten me but I can see how you could threaten by the sort of way you talk—fast and low.

### 3. Trial court powers.

Proceedings under the Domestic Abuse Act involve adjudication of facts and the potential award of substantial relief. They are not merely investigative proceedings.

*Cf., Hannah v. Larche,* 363 U.S. 420, 441, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960) (deciding due process rights in a pure investigative proceeding, as compared to those rights in an adjudicative proceeding). In such proceedings, due process is mandatory. *Jenkins v. McKeithen,* 395 U.S. 411, 425–28, 89 S.Ct. 1843, 1850–52, 23 L.Ed.2d 404 (1969).

The Domestic Abuse Act makes an unusual grant of authority to the trial court.[1] The powers of the court parallel those of a trial court in a dissolution case.[2] In addition, however, the court can order a party to participate in treatment or counseling services, and can grant "other relief as it deems necessary for the protection of a family or household member." Minn.Stat. § 518B.01, subds. 6(f) and (h). The statute also empowers the court to command police assistance in the execution of the order of protection. *Id.,* subd. 9. Violations of orders constitute a criminal offense as well as contempt of court, and special police powers are granted to permit arrest and custody of a person who is believed to have violated a personal restraining order. *Id.,* subd. 14.

### 4. Hearing.

According to the Domestic Abuse Act, an order for protection may issue "upon notice and hearing." *Id.,* subd. 6. Appellant asserts that he was denied an evidentiary hearing and claims that the proceedings here deprived him of liberty without due process of law. The majority concludes that appellant was not denied an evidentiary hearing. I am convinced that appellant did not enjoy the hearing contemplated by the statute, that the process was not in accord with judicial standards for similar proceedings, and that the process involved a serious violation of appellant's constitutional rights for due process.

Appellant was not confronted with any testimony of petitioner on her allegations. He was not offered the opportunity to ask questions of petitioner. The right to confront and cross-examine witnesses is a fundamental aspect of procedural due process.

1. According to the statute, the trial court may take the following steps in an order for protection:
   (a) restrain the abusing party from committing acts of domestic abuse;
   (b) exclude the abusing party from the dwelling which the parties share or from the residence of the petitioner;
   (c) award temporary custody or establish temporary visitation with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children. If the court finds that the safety of the victim or the children will be jeopardized by unsupervised or unrestricted visitation, the court shall condition or restrict visitation as to time, place, duration, or supervision, or deny visitation entirely, as needed to guard the safety of the victim and the children. The court's deliberation under this subdivision shall in no way delay the issuance of an order for protection granting other reliefs provided for in Laws 1985, chapter 195;
   (d) on the same basis as is provided in chapter 518, establish temporary support for minor children or a spouse, and order the withholding of support from the income of the person obligated to pay the support according to chapter 518;
   (e) provide upon request of the petitioner counseling or other social services for the parties, if married, or if there are minor children;
   (f) order the abusing party to participate in treatment or counseling services;
   (g) award temporary use and possession of property and restrain one or both parties from transferring, encumbering, concealing, or disposing of property except in the usual course of business or for the necessities of life, and to account to the court for all such transfers, encumbrances, dispositions, and expenditures made after the order is served or communicated to the party restrained in open court;
   (h) order, in its discretion, other relief as it deems necessary for the protection of a family or household member, including orders or directives to the sheriff or constable, as provided by this section.
   Minn.Stat. § 518B.01, subd. 6(a)-(h).

2. It is true, as the majority asserts, that the Domestic Abuse Act permits proceedings dealing with issues arising at the same time in a dissolution case. *See* Minn.Stat. 518B.01, subd. 16 (domestic abuse proceedings are "in addition to other civil or criminal remedies"). This characteristic of the proceedings increases the impact of many orders for protection, including the order in this case. Appellant contends that the order for protection in this case contradicts and undermines a trial court decision in a dissolution case, a decision rendered after a full presentation of evidence in the case. This added potential impact of the Domestic Abuse Act order enlarges the need for due process.

This concept of law has been frequently announced by the United States Supreme Court. *See, e.g., Willner v. Committee on Character and Fitness*, 373 U.S. 96, 103–104, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224 (1963).

In addition, appellant was denied his right to present evidence. The trial court referee failed to give an opportunity for testimony of either party on the evidence that was said to constitute an act or acts of domestic abuse. To comport with the constitutional requirement for due process, a hearing must include the right of a party to present evidence on his own behalf. *Jenkins v. McKeithen*, 395 U.S. at 429, 89 S.Ct. at 1852. Appellant's opportunity to present evidence could not be left dependent upon the "unfettered discretion" of the referee. *Id.* It is true that we are not dealing here with denial of a request to present evidence. However, in the setting of these proceedings, the constitutional rights of appellant cannot be conditioned upon his assertiveness. Neither party was represented by counsel, and it is evident that presentations for either party would only occur to the extent an opportunity was given by the presiding referee. It is necessary in these proceedings that the responding party be given a definite opportunity to testify on the factual issues in the case.

A second proceeding occurred in this case after appellant requested that the referee's decision, endorsed by a trial judge, be further reviewed under Rule 53.05 of the Minnesota Rules of Civil Procedure for the District Court. The majority reports that both parties submitted additional evidence in the review proceeding. However, I find nothing in the record here to substantiate the observation that an evidentiary hearing was conducted on review. In its order in the review proceedings, the trial court observed that the matter was decided on written arguments. These written arguments appear of record. Respondent's position was written in her unsworn statement, which was evidently treated by the court as a written argument. Appellant also submitted a written argument. The only presentation of evidence was in the form of a short affidavit accompanying appellant's written argument. In this affidavit, appellant repeated his emphatic denial of the truth of statements contained in respondent's petition for relief. In his written statement, appellant specifically challenged the sufficiency of evidence in the case and asked, as an alternative to a decision to void the initial order, that the matter be remanded for a full evidentiary hearing. In its order in the review proceedings, the trial court unconditionally affirmed the initial order.

### 5. Findings.

The requirement for particularized findings has become a cornerstone of justice in Minnesota for cases involving the exercise of broad discretionary powers. This has become part of our law as a matter of judicial policy of the Minnesota Supreme Court. *See Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971) (in view of the broad discretion of the trial court in "domestic relations cases generally," it is "especially important" that the basis for the trial court's decision be set forth with a "high degree of particularity"). The supreme court views particularized findings as a prerequisite to meaningful appellate review. *Id.* It has explained, in addition, that written findings reflecting consideration of statutory standards assure that those standards are followed and satisfy the parties that an important decision has been carefully and fairly determined. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976).

The demand for appropriate findings goes beyond a matter of good judicial policy. It is an established part of constitutional due process. *Baltimore & O.R. Co. v. United States*, 298 U.S. 349, 369, 56 S.Ct. 747, 808, 80 L.Ed. 1209 (1936) (and cases cited therein) (due process hearing rights include "the right to introduce evidence and have judicial findings based upon it"). *See, e.g., Kent v. United States*, 383 U.S. 541, 561, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966). *See also Price v. Sheppard*, 307 Minn. 250, 262–63, 239 N.W.2d 905, 913 (1976) (constitutional right of privacy requires consideration of precise stan-

dards in decisions on certain treatment of committed patients).

### 6. Child welfare.

Another dissenting opinion addresses the question whether the trial court had too little evidence to justify restrictions on appellant's visitation of his children. I agree that there was no evidence showing appellant had abused his children or was likely to do so. There was no claim before the court that alleged abuse of respondent had been harmful to the children. Even if contacts between spouses were to be supervised, prompted by sufficient evidence of spousal abuse, it does not follow that there cannot be unlimited interaction between either parent, separately, and the children.

It is unclear to me whether the trial court's order called for interference with the privacy of those occasions when the children might be in the separate company of their father. To the extent the order led to any such limitation, I agree that this would be inappropriate here, even if there were lawful findings of spousal abuse.

Appellant challenges restrictions on his visitation rights, arguing primarily that the trial court wrongfully interfered with the resolution of that issue by another trial judge in a dissolution case. Appellant's arguments call attention to the trial court's order on visitation rights, which presents still another serious problem of wrongful exercise of authority.

The pre-printed order for protection employed in this case grants the petitioner (respondent on appeal) the right of custody of the children, subject to appellant's right of visitation "as follows." The form then suggests the selection of one of three options, either

A) Reasonable and liberal with 24–hours notice to petitioner;

B) Determined and supervised by Department of Court Services (Telephone No. 292–6528).

C) Other _____

Here the trial court checked the second option on the form and thereby delegated to its Department of Court Services the complete authority to determine when and where visits should occur, how they should be supervised, or whether they should occur at all.

In my opinion, the complete delegation of authority on the visitation issue, or any material issue in the case, is in gross conflict with the language and the intention of the Domestic Abuse Act. In addition, the failure to specify what relief is granted, done without any specific relevant evidence and without any findings of fact, is a further breach of due process, offending not only the rights of appellant but also the due process rights of the children. For this reason, I agree that there is an additional mandate to reverse that portion of the order for protection dealing with appellant's visitation of the children.

### 7. Conclusion.

I recognize the vital laudatory purpose of the Domestic Abuse Act to permit prompt and easy access to the courts on abuse cases. This exemplary purpose, however, does not permit the grant of great powers, putting privacy interests, liberty interests and property interests at risk, without the imposition of restraint brought about through the mandate for due process. Given the importance of this issue, it is not too much to ask of Minnesota trial courts that they make decisions in these cases based on adequate findings of fact supported by competent evidence. Unless we wish to abandon the demand for employment of the rule of law, licensing wholly unfettered exercise of authority in summary proceedings, we should reverse the trial court's decision in this case.