In re the Marriage of Marjorie Mary
McINTOSH, petitioner,
Respondent,

v.

Kenneth King McINTOSH, Appellant.

Nos. A06–1432, A06–1444.

Court of Appeals of Minnesota.

Oct. 16, 2007.

Steven A. Sicheneder, Forest Lake, MN, for respondent.

Mark A. Olson, Burnsville, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; HALBROOKS, Judge; and PARKER, Judge.*

## OPINION

HALBROOKS, Judge.

In this consolidated matter, appellant argues that the district court erred by including, as marital property, the undistributed subchapter S corporation earnings and the rents paid to the business but owed to appellant. Respondent argues that the district court erred when it (1) determined that the proceeds from the sale of appellant's mother's home during the marriage constituted nonmarital property and (2) credited appellant for the amount appellant paid in federal and state tax liabilities incurred during the marriage. Because we conclude that the district court erred by treating the undistributed subchapter S earnings and the rents paid to the business as marital property, we reverse that portion of the dissolution judgment. Because we conclude that the district court did not clearly err in determining that the proceeds from the sale of appellant's mother's home constituted nonmarital property and that appellant should

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

be credited for the taxes that he paid, we affirm the district court on those issues.

Appellant also challenges the district court's decision to extend the original order for protection against him, arguing that (1) because he stipulated to the original order for protection without a finding of the existence of domestic abuse, the district court must make a finding of domestic abuse in order to extend an existing order and (2) the evidence does not support the district court's decision to extend the order for protection. Because the district court is not required to make a finding of domestic abuse in order to extend an order for protection if the original order is based on a stipulation and because the evidence sufficiently supports the extension, we conclude that the district court did not abuse its discretion by granting respondent's request to extend the order for protection against appellant.

We therefore affirm in part, reverse in part, and remand.

## FACTS

### I. Marriage Dissolution

The marriage of appellant Kenneth King McIntosh and respondent Marjorie Mary McIntosh was dissolved by judgment and decree on September 12, 2005. The parties have eight children, six of whom were minors at the time of the dissolution. The parties agreed that respondent would be awarded sole legal and physical custody of the minor children, subject to appellant's parenting time. Appellant was ordered to pay child support in the amount of $2,474 per month and temporary monthly spousal maintenance of $3,000 for three years. The parties also agreed that the homestead, valued at $450,000, would be awarded to respondent.

Appellant was the owner of Unidale Insurance Agency, a subchapter S corporation that was described as a "substandard" agency dealing with risk insurance products for people or companies unable to obtain insurance elsewhere. Appellant was the only licensed agent at Unidale and the only person to write policies and perform consulting services. He took an annual salary of $30,000 from the company and received the balance of his compensation in the form of distributions from the subchapter S corporation. Although the distribution was technically available to appellant at the end of the calendar year, his practice was to hold back much of the distribution until his income taxes were prepared the following March.

During trial, both parties presented expert testimony concerning the value of Unidale's assets. The experts agreed that Unidale's value had two components—the assets of the company (name reputation, good will, etc.) and the cash on hand. Stephen Dennis, respondent's expert, testified that the value of the company was $220,861. Edward Bates, appellant's expert, determined that the value of the agency was at most $78,330, and at the very least $67,913. The district court, concluding that "Mr Dennis' valuation did not take adequately into account the fact that Unidale is a substandard risk agency with very limited marketability," determined that the fair market value of Unidale was $67,913.

The district court also examined the amount of cash in Unidale's bank accounts. The district court found that Unidale had a bank account with University Bank carrying a balance of $101,673.26, and another account with Western Bank valued at $103,942.12. Appellant's expert, Jeffrey Pletcher, reconciled the accounts payable and owner's equity from the accounts and concluded that Unidale had a cash value of $65,199.12 after deducting: (1) $22,630 for undistributed subchapter S earnings; (2)

$14,443 for rents collected by Unidale but owed to appellant; (3) $70,093.98 for insurance company payables; (4) $6,097.64 for regular accounts payable; (5) $7,009.40 for commissions received in 2003 for 2004; (6) $7,009.40 for policy fees received in 2003 for 2004; and (7) $13,132.84 for insurance deposits received in 2003 for policies to be issued in 2004. The district court determined that if Unidale were sold, all of the above amounts, with the exception of the undistributed subchapter S earnings and the rents paid to Unidale but owed to appellant, would be payable by Unidale from available cash. The district court determined that the undistributed subchapter S earnings and rents paid to Unidale but owed to appellant were a marital asset and therefore would not be payable to a buyer. Accordingly, the district court declined to deduct the amounts for undistributed subchapter S earnings and rents paid, concluding that Unidale had a cash balance of $102,272.12 that constituted a marital asset.

In addition, in its analysis of "investment accounts," the district court made the following finding:

> The parties had a Certificate of Deposit at Lino Lakes State Bank with Certificate No. 3319 having a balance in the amount of $100,000.00. On June 13, 2003, [appellant] cashed in the certificate. A new certificate in the amount of $50,000.00 was purchased with [appellant] keeping $50,000.00 plus interest of $2,202.78 for himself. [Appellant] is being awarded this bank account with its value being taken into consideration in the division of the marital estate.

Appellant subsequently brought a motion for a new trial or amended findings, requesting, in part, that the district court amend its findings with regard to: (1) the cash value of Unidale and (2) the amount of credit due appellant for marital tax liabilities paid using the $50,000 that he cashed out of the Lino Lakes certificate of deposit. The district court denied appellant's request to amend the finding on the cash value of the Unidale accounts, finding that "the matter was fully litigated at the trial, including presentation of experts and evidence by both parties" and that the district court "properly and thoroughly considered the matter and in [its] discretion, fully and appropriately decided this matter." But the district court granted appellant's request to amend the finding on the Lino Lakes certificate of deposit, finding that "appropriate credit was not given to [appellant] regarding marital tax liabilities that he accounted for as paid from these amounts."

## II. Order for Protection

On December 27, 2002, respondent petitioned for an order for protection against appellant, alleging that appellant had "inflicted or threatened domestic abuse" upon her and stating that she "fear[ed] immediate and present danger of further acts of domestic violence." In an accompanying affidavit, respondent stated that beginning in October 2002, appellant would wake her up during the night to lecture her, calling her names and blaming her for his troubles. Respondent alleged that appellant would grab her shoulders and shake her, starting slowly and then speeding up before realizing what he was doing and stopping.

Respondent also stated that appellant had threatened her with his fist and that, on one occasion, he entered the kitchen and hit her with a "glancing blow" to the chin. Respondent stated that prior to December 24–25, 2002, appellant was continually "growling" at her, blaming her for his problems. On the morning of December 25, appellant was "very angry" with respondent and "raged at [her]." As a re-

sult, respondent spent the night "at a safe place." When respondent returned home the morning of December 26, appellant confronted her in the kitchen and "rammed [her] with his shoulder, causing [her] to fall to the floor with force." When respondent called 911, appellant followed her through the house while she was on the phone, eventually forcing his way into a bathroom where respondent and the couple's daughter had retreated, blocking their exit. Respondent stated that she was "afraid of the physical and emotional damage [appellant] could inflict on [her]," and was afraid appellant would "physically hurt" her.

On December 30, 2002, the district court issued an emergency ex parte order for protection against appellant. At a subsequent hearing, appellant stipulated to an order, and the district court issued an order for protection that was effective for one year. Specifically, paragraph 4.b. of the order states: "[appellant] does not object to an Order for Protection and understands that the Order will be enforced as if there were an admission or finding of domestic abuse."

On January 20, 2004, respondent applied for an extension of the order for protection. The district court issued an extended order for protection on March 22, 2004, effective for two years, finding that appellant had violated the previous order, that respondent was "reasonably in fear of physical harm from [appellant]," and that appellant had "engaged in acts of harassment or stalking." The district court subsequently amended a portion of the order for protection, stating, in part, that appellant should have no contact with respondent other than for purposes of mediation.

On February 13, 2006, respondent sought another extension of the order for protection. The district court initially entered a temporary order to extend the

order for protection, pending a hearing. At the hearing, respondent testified that on December 28, 2005, she had a conversation with appellant when he answered a call she had placed to one of their children on the child's cell phone. Respondent testified that during the conversation, appellant "raged" at her, causing her to fear him. The district court found that respondent's testimony was "credible" and "that she evidenced an obvious fear of physical harm from [appellant]." The district court also noted that appellant had violated the previous order for protection on two occasions. While the district court recognized that these violations alone were not sufficient to extend the order for protection, the district court found that the "prior incidents, along with the incidents as recent as December 2005 taken as a whole support [respondent's] assertion that she is in reasonable fear of physical harm from [appellant]." Accordingly, the district court granted respondent's motion to extend the order for protection for two years, concluding that respondent was "reasonably in fear of physical harm from [appellant]."

This consolidated appeal follows.

## ISSUES

1. Did the district court clearly err in determining Unidale's cash balance?

2. Did the district court err by determining that the entire proceeds from the sale of appellant's mother's home during the marriage were appellant's nonmarital property?

3. Did the district court clearly err in crediting appellant for the amounts he paid in federal and state income taxes?

4. Did the district court abuse its discretion when it extended the order for protection against appellant ab-

sent a showing of the existence of domestic abuse when the original order for protection was stipulated to?

5. Is the evidence sufficient to support the district court's decision to grant respondent's petition to extend the order for protection?

## ANALYSIS

### I.

#### A. Valuation of Unidale

Appellant argues that the district court clearly erred because it included in its valuation of Unidale the undistributed subchapter S earnings and rents paid to Unidale but owed to appellant while also including the same amounts in appellant's income. As a result, the undistributed subchapter S earnings and rents were treated as both a marital asset and as appellant's income in calculating his child-support obligation.

■ A district court's valuation of an item of property is a finding of fact, and it will not be set aside unless it is clearly erroneous on the record as a whole. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn.2001); *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). An appellate court does not require the district court to be exact in its valuation of an asset; "it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979) (citing *Hertz*, 304 Minn. at 145, 229 N.W.2d at 44).

The district court found that, as of the valuation date, Unidale had bank balances of $101,673.26, and $103,942.12. Appellant's expert testified that, in determining Unidale's value, those balances should be reduced by Unidale's outstanding obligations, resulting in a net value for the accounts of $65,199.12. But the district court found that the proposed deductions in the amount of $22,630 for undistributed subchapter S earnings and $14,443 for rents paid to Unidale but owed to appellant were marital assets that would not be payable to a buyer. Therefore, the district court concluded that these amounts should not be deducted, leaving a cash value of $102,272.12 to be divided between the parties.

■ Appellant contends that because the undistributed subchapter S earnings and rents paid to Unidale but owed to appellant were treated by the district court as "income" for child-support purposes, the district court erred in finding that the cash amounts should not be deducted from the value of Unidale. We agree.

In determining appellant's income, the district court found that appellant earned a yearly salary of $30,000 and "receives the rest of his compensation as distributions from the Subchapter S Corporation." The district court also found that appellant receives social-security-retirement benefits, interest income from investment accounts, and rental income from the Unidale building. Because appellant did not provide either corporate or personal income tax records for 2004, the district court determined appellant's income by averaging appellant's reported earnings in 2001–2003, resulting in a gross annual income of $213,164. This amount included 2003 distributions from the subchapter S corporation and rents paid to Unidale. The district court then used appellant's average gross annual income minus the allowable statutory deductions to determine his net income for child-support purposes. *See* Minn.Stat. § 518.551, subd. 5(b) (2004) (listing allowable deductions from gross income).

But when determining the amount of cash that Unidale possessed, the district

court declined to deduct the relevant amounts for the undistributed earnings and rents paid that were supposed to be paid to appellant as income, instead finding that such amounts should not be deducted from the cash value of Unidale. Accordingly, the undistributed earnings and rents that were attributed to appellant as income were also included in the cash value of Unidale and, therefore, divided as a marital asset.

Based on our review of the record, we conclude that the district court's finding of the value of Unidale's cash assets was clearly erroneous. Pletcher testified that the undistributed subchapter S earnings should have been deducted from the cash value of Unidale because the undistributed earnings "were included in the earnings that appeared on [appellant's] 2003 tax returns." Similarly, Pletcher opined that the rents paid to Unidale should have been deducted from the value of the company, as the relevant amounts were included as income in appellant's 2003 tax returns. Specifically, Pletcher stated, "[Appellant] owns the building, but [Unidale] collects some rents. And [appellant] deposited them in the [Unidale] checking book, but they belong to [appellant]. So, therefore, there is money sitting in an account that wasn't given to [appellant] for his rents."

Because the record supports the finding that the undistributed subchapter S earnings and the rents paid to Unidale but owed to appellant should have been deducted from the cash value of Unidale, we conclude that the district court clearly erred in determining the cash value of the business.

## B. Sale proceeds from appellant's mother's home

█ Respondent argues that the district court erred when it determined that the proceeds from the sale of appellant's moth-er's home during the marriage constituted nonmarital property. While respondent concedes that the home was a gift to appellant from his mother, she contends that because appellant co-mingled the nonmarital funds related to the sale of the house with marital funds and did not adequately trace the funds, the funds are marital property.

The district court found:

Both parties confirmed that the monies were placed in the joint Western Bank account for a few days and then used along with joint funds to purchase the Lino Lakes Certificate of Deposit. As there is no dispute as to the source of funds as coming from a gift to [appellant] and as both parties agree that the funds were ultimately placed in the Lino Lakes Certificate of Deposit, the court awards [appellant] the sum of $47,547.96 from the Lino Lakes Certificate of Deposit as his non-marital asset.

This finding is supported by the record. Therefore, we conclude that appellant adequately traced a nonmarital interest in the certificate of deposit and we affirm the district court on this issue.

## C. Federal and state income taxes

█ Respondent argues that the district court erred when it credited appellant for the amount he paid for the parties' federal and state income taxes. In the judgment and decree, the district court found:

The parties had a Certificate of Deposit [CD] at Lino Lakes State Bank with Certificate No. 3319 having a balance in the amount of $100,000.00. On June 13, 2003, [appellant] cashed in the certificate. A new certificate in the amount of $50,000.00 was purchased with [appellant] keeping $50,000.00 plus interest of $2,202.78 for himself. [Appellant] is being awarded this bank account with its

value being taken into consideration in the division of the marital estate.

Appellant subsequently moved for a new trial or amended findings, arguing, in part, that he used $50,000 from the CD to pay $49,729.08 in marital tax liabilities and therefore "should be given credit for those payments and be reimbursed from either the Lino Lakes certificate, or from another asset."

The district court granted appellant's motion to amend the finding regarding the Lino Lakes CD, concluding that "appropriate credit was not given to [appellant] regarding marital tax liabilities that he accounted for as paid from these amounts. The tax liabilities for the years 2000, 2001 and 2002 were marital obligations and due to refiling of tax returns for these years, were incurred post-separation." Accordingly, the district court amended the finding to read:

> Lino Lakes State Bank. The parties had a Certificate of Deposit at Lino Lakes State Bank with Certificate No. 3319 having a balance in the amount of $100,000. On June 13, 2003, [appellant] cashed in the certificate. A new certificate in the amount of $50,000 was purchased with [appellant] keeping $50,000 plus interest of $2,202.78 for himself. [Appellant] paid the joint marital tax obligations for the years 2000, 2001 and 2002 out of these proceeds, in a total amount of $49,728.58 following separation. One payment for this tax liability was made prior to cashing the Certificate of Deposit. The prior payment in the amount of $2,793.88 is deducted from the above tax amount that [appellant] paid. Therefore, [appellant] is entitled to be reimbursed for $46,934.70 ($49,728.58 taxes liability paid minus first payment of $2,793.88) for his payment of the marital tax obligations for the years 2000, 2001, and 2002. [Appel-

lant] is being awarded his nonmarital interest in the certificate ($47,547.96) pursuant to Finding of Fact 31 below. The remaining balance of the certificate, $5,517.34, is being awarded to [appellant] as a marital asset.

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Minn. R. Civ. P. 52.01. "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (quotation omitted).

Respondent, citing finding of fact 21 and conclusion of law 21 of the original judgment, argues that the district court erred in amending the finding because appellant had agreed to hold respondent harmless for tax liabilities in exchange for respondent's signature on the 2002 federal and state tax returns. Respondent's argument is belied by the plain language of the district court's order. Finding of fact 21 states:

> The parties have no marital debt, with the exception of taxes resulting from [respondent] failing to sign the joint 2002 tax return and instead filing her own return. [Respondent] agreed under oath to sign the joint 2002 return, provided that [appellant] held her harmless for any errors or mistakes in the return. [Respondent] is hereby ordered to sign the joint return, subject to the hold harmless clause.

Conclusion of law 21 orders respondent "to sign the joint 2002 federal and state tax returns," and further states that appellant "shall be solely responsible and hold [respondent] harmless for any resulting liabilities thereon."

As the district court noted, this finding and conclusion indicate that appellant would hold respondent harmless for any

errors or mistakes that appellant may make in preparing the tax returns. But they do not provide that appellant is solely responsible for paying the parties' tax obligations. Accordingly, we conclude that the district court did not clearly err by amending the finding, thereby crediting appellant for the amount he paid on behalf of the parties for their federal and state income tax liabilities.

## II.

■ Appellant argues that because he stipulated to the original order for protection without an explicit finding of the existence of domestic abuse, respondent must show domestic abuse in order to extend the existing order for protection. Whether to grant relief under the Domestic Abuse Act (Minn.Stat. ch. 518B) is discretionary with the district court. *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn.App.2005) (citing *Mechtel v. Mechtel*, 528 N.W.2d 916, 920 (Minn.App. 1995)); *Hall v. Hall*, 408 N.W.2d 626, 629 (Minn.App.1987), *review denied* (Minn. Aug. 19, 1987).

In order to obtain an order for protection, the petition for relief must allege the existence of domestic abuse. Minn.Stat. § 518B.01, subd. 4(b) (2006). "Domestic abuse" includes physical harm, bodily injury, assault, or "the infliction of fear of imminent physical harm, bodily injury, or assault," if committed by a family member against another family member. Minn. Stat. § 518B.01, subd. 2(a) (2006). Minn. Stat. § 518B.01, subd. 6a (2006), which sets forth the requirements for the extension of an existing order for protection, states that

[t]he court may extend the terms of an existing order or, if an order is no longer in effect, grant a new order upon a showing that:

(1) the respondent has violated a prior or existing order for protection;

(2) the petitioner is reasonably in fear of physical harm from the respondent;

(3) the respondent has engaged in acts of harassment or stalking within the meaning of section 609.749, subdivision 2; or

(4) the respondent is incarcerated and about to be released, or has recently been released from incarceration.

Section 518B.01, subdivision 6a, further provides that "[a] petitioner does not need to show that physical harm is imminent to obtain an extension or a subsequent order under this subdivision." Thus, while section 518B.01, subdivision 4(b), requires a petitioner to allege the existence of domestic abuse to obtain an order for protection, a petitioner seeking the *extension* of an existing order for protection under section 518.01, subdivision 6a, "does not need to show that physical harm is imminent," but instead must show only that, among other alternatives, the individual is reasonably in fear of physical harm.

Appellant has two arguments. He first contends that because he stipulated to the original order for protection and, therefore, the district court never made a finding of domestic abuse, respondent must now show the existence of domestic abuse in order to obtain an extension of the existing order for protection. Statutory construction is a question of law, which this court reviews de novo. *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003); *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). The goal of statutory interpretation is to effectuate the intent of the legislature. *Educ. Minn.-Chisholm*, 662 N.W.2d at 143. "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one rea-

sonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004); *see also* Minn.Stat. § 645.08 (2006). "A statute should be interpreted, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Schroedl,* 616 N.W.2d at 277 (quoting *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999)). And "[w]e are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.*

■ Minn.Stat. § 518B.01, subd. 6a, is clear and unambiguous. Its plain language states that the district court may extend an existing order for protection if the petitioner shows that (1) respondent has violated the order for protection; (2) petitioner is reasonably in fear of physical harm; (3) respondent has engaged in acts of harassment or stalking; or (4) respondent is incarcerated and about to be released or has recently been released. The provisions of section 518B.01, subdivision 6a, do not require a present showing of domestic abuse. In fact, the express language of the statute provides that a petitioner does not need to show imminent physical harm to obtain an extension of an order for protection. Accordingly, we reject appellant's argument that a petitioner must show domestic abuse in order to obtain an extension of an order for protection under section 518B.01, subdivision 6a, when a respondent has stipulated to the original order for protection.

Paragraph 4.b. of the original order for protection against appellant states: "[Appellant] does not object to an Order for

Protection and understands that the Order will be enforced as if there were an admission or finding of domestic abuse." Because appellant did not object to the order and understood that the order would be enforced as if the district court had made a finding of domestic abuse, the district court does not now have to find the existence of domestic abuse when considering an application for extension of the existing order for protection. By its explicit terms, the stipulation operates as if the district court already made such a finding.

■ Appellant also contends that the evidence does not support the district court's decision to grant respondent's request to extend the order for protection, and thus the district court's order extending the order for protection must be reversed. A district court's broad discretion in crafting and issuing orders for protection has been consistently recognized by this court. *See, e.g., Mechtel,* 528 N.W.2d at 920; *Hall,* 408 N.W.2d at 629. This court will reverse a district court's decision to issue an order for protection under the Minnesota Domestic Abuse Act if it lacks sufficient evidentiary support. *Bjergum v. Bjergum,* 392 N.W.2d 604, 606–07 (Minn. App.1986). But "[a] district court's findings of fact will not be set aside unless they are clearly erroneous." *Tagliente,* 693 N.W.2d at 489; *see also* Minn. R. Civ. P. 52.01. On review, we view the evidence in the light most favorable to the district court's findings and give special deference to findings that are made upon conflicting evidence. Minn. R. Civ. P. 52.01; *see Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn. 1988) (stating that appellate courts defer to district court credibility determinations). A district court's factual findings will be reversed only if, after reviewing the entire record, we are "left with the definite and firm conviction that a mistake has

been made." *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987).

■ In respondent's application to extend the order for protection, she asserted that appellant violated the prior order for protection on two occasions. Respondent testified that the first violation occurred in the spring of 2005, when appellant pulled into her driveway to pick up one of the children. The second violation occurred when appellant allegedly called respondent's home on an unapproved phone line. Both of those incidents were reported to the police, but the charges were later dismissed.

Respondent also indicated in the application for extension that she was fearful of physical harm from respondent as a result of a phone conversation she had with him. Specifically, respondent claims that on one occasion she called one of her children on the child's cell phone but appellant answered and proceeded to "rage[]" at her and demand that she "repent." At the subsequent hearing on respondent's motion to extend the order, respondent similarly stated that when she called the child's phone, appellant "answered and ... went into a big rage ... telling [her] to start repenting." Respondent testified that when she was speaking with appellant, she "felt afraid" and that she still has fear of physical harm from appellant. Appellant denied that he "raged" at respondent or told her to "repent."

The district court granted respondent's motion to extend the order for protection against appellant, finding that "the prior incidents," along with the telephone incident that occurred on December 28, 2005, "taken as a whole support [respondent's] assertion that she is in reasonable fear of physical harm from [appellant]." While the district court noted respondent's allegation that appellant had violated the previous order for protection, the district court did not extend the order for protection on the basis of the alleged violations. Instead, the district court extended the order based only on the conclusion that respondent "is reasonably in fear of physical harm from [appellant]."

While appellant disputes the extent of respondent's reasonable fear of physical harm, on this record, we cannot say that the district court's factual finding is clearly erroneous. Respondent's application for extension and her testimony at the hearing both sufficiently support the district court's findings. The record evidence also supports the district court's conclusion that respondent "is reasonably in fear of physical harm from [appellant]." Accordingly, we conclude that the district court did not abuse its discretion when it granted respondent's request to extend the order for protection pursuant to Minn.Stat. § 518B.01, subd. 6a(2).

## DECISION

We conclude that the district court did not clearly err in determining that (1) the proceeds from the sale of appellant's mother's home constituted nonmarital property and (2) appellant should be credited for the amounts he paid for state and federal income tax liabilities incurred during the marriage. We also conclude that the district court did not abuse its discretion in granting respondent's request to extend the existing order for protection against appellant. We therefore affirm in part. But because we conclude that the district court clearly erred by including in the value of Unidale the amounts for undistributed earnings and rents paid to Unidale while also including those amounts in appellant's income, we reverse that portion of the judgment and remand for a recalculation of the property division.

Affirmed in part, reversed in part, and remanded.