WILLNER *v.* COMMITTEE ON CHARACTER AND
FITNESS, APPELLATE DIVISION OF THE
SUPREME COURT OF NEW YORK,
FIRST JUDICIAL DEPARTMENT.

No. 140.   Argued February 21, 1963.—Decided May 13, 1963.

*Henry Waldman* argued the cause and filed briefs for petitioner.

*Daniel M. Cohen,* Assistant Attorney General of New York, argued the cause for respondent. With him on the briefs were *Louis J. Lefkowitz,* Attorney General, and *Paxton Blair,* Solicitor General.

*Herbert Monte Levy, Robert B. McKay* and *Herbert Prashker* filed a brief for the Committee on the Bill of Rights of the Association of the Bar of the City of New York, as *amicus curiae,* urging reversal.

Opinion of the Court by Mr. Justice Douglas, announced by Mr. Justice Black.

Petitioner passed the New York bar examinations in 1936 but has not yet been admitted to practice. The present case is the latest in a long series of proceedings whereby he seeks admission.

Under New York law the Appellate Division of the State Supreme Court of each of the four Judicial Departments

has power to admit applicants to the Bar. Once the State Board of Bar Examiners certifies that an applicant has passed the examination (or that an examination has been dispensed with), the Appellate Division shall admit him to practice "if it shall be satisfied that such person possesses the character and general fitness requisite for an attorney and counsellor-at-law." Judiciary Law § 90 (1)(a).

The Appellate Division is required by Rule 1 of the New York Rules of Civil Practice to appoint a committee of not less than three practicing lawyers "for the purpose of investigating the character and fitness" of applicants. "Unless otherwise ordered by the Appellate Division, no person shall be admitted to practice" without a favorable certificate from the Committee. *Ibid.* Provision is made for submission by the applicant to the Committee of "all the information and data required by the committee and the Appellate Division justices." *Ibid.* If an applicant has once applied for admission and failed to obtain a certificate of good character and fitness, he must obtain and submit "the written consent" of the Appellate Division to a renewal of his application. *Ibid.*

The papers of an applicant for admission to the Bar are required by Rule 1 (g) of the Rules of Civil Practice to be kept on file in the Office of the Clerk of the Appellate Division.

The Court of Appeals pursuant to its rule-making authority (Judiciary Law § 53(1)) has promulgated Rules for the Admission of Attorneys and Counsellors-at-Law which provide, *inter alia,* that every applicant must produce before the Committee "evidence that he possesses the good moral character and general fitness requisite for an attorney and counsellor-at-law" (Rule VIII–1), and that justices of the Appellate Division shall adopt "such additional rules for ascertaining the moral and general

fitness of applicants as to such justices may seem proper."
Rule VIII–4.

The Appellate Division to which petitioner has made
application has not promulgated any "additional rules"
under Rule VIII–4. Its Character and Fitness Committee
consists of 10 members; and that Committee, we are
advised, has not published or provided any rules of
procedure.

The statute provides that "all papers, records and docu-
ments" of applicants "shall be sealed and be deemed pri-
vate and confidential," except that "upon good cause be-
ing shown, the justices of the appellate division . . . are
empowered, in their discretion, by written order, to permit
to be divulged all or any part of such papers, records and
documents." Judiciary Law § 90 (10). And for that
purpose they may make such rules "as they may deem
necessary." *Ibid.*

But New York does not appear to have any procedure
whereby an applicant for admission to the Bar is served
with an order to show cause by the Appellate Division
before he is denied admission nor any other procedure
that gives him a hearing prior to the court's adverse
action.[1]

---

[1] In New Jersey the Committee on Character and Fitness is di-
rected by Rule 1:20–6 (a) of the Supreme Court Rules to take the
following steps in case of an adverse report:

"If the committee believes that an applicant is not of fit character
or has not served a satisfactory clerkship, it shall promptly notify the
applicant of its intention to file an adverse report as to his moral
character or clerkship and of the time, not less than 5 days, within
which the applicant may file with the committee a written request
for a hearing. If the applicant does not request a hearing within the
time fixed by the committee, it shall promptly notify him of its
action and file its report with the court for appropriate action by it.
If the applicant requests a hearing within the time fixed by the com-
mittee, it shall promptly notify him of the time and place of the

The present case started with a petition by Willner to the Appellate Division seeking leave to file a *de novo* application which alleged the following:

Willner had been certified by the State Board of Bar Examiners as having passed the bar examinations in 1936, and the Committee in 1938, after several hearings, filed with the Appellate Division its determination that it was not satisfied and could not "certify that the applicant possesses the character and general fitness requisite for an attorney and counsellor-at-law." In 1943 Willner applied to the Appellate Division for an order directing the Committee to review its 1938 determination. This motion was denied without opinion. Willner in 1948 again petitioned the Appellate Division for a reexamination of his application, and for permission to file a new application. The Appellate Division permitted him to file a new application. Upon the filing of that application, the Committee conducted two hearings in 1948 and, by a report in 1950, refused to certify him for the second time. In 1951 Willner again made application to the Appellate Division for an order directing, *inter alia,* the Com-

---

hearing. The hearing shall be conducted in private and in a formal manner. A complete stenographic record shall be kept and to this end an official court reporter of the county, assigned by the supervising court reporter for that purpose, shall serve the committee and prepare, without additional compensation, such transcripts as may be ordered by it. A transcript may be ordered by the applicant at his own expense. The committee shall submit a report of its findings and conclusions to the court, with a copy to the applicant, for appropriate action by it. An applicant aggrieved by the determination of the committee may, on notice to the committee, petition the court for relief."

Rule 1:20–6 (b) goes on to provide:

"The Board of Bar Examiners, subject to the approval of the court, shall prescribe the procedures to be followed by the committees on character and fitness in the performance of their duties under paragraph (a) of this rule."

mittee to furnish him with statements of its reasons for its refusal to certify him or that a referee be appointed to hear and report on the question of his character and fitness. This application was denied without opinion. In 1954 Willner filed a fourth application with the Appellate Division requesting leave to file an application for admission. This was denied without opinion. The Court of Appeals refused leave to appeal, and this Court denied certiorari. 348 U. S. 955. In 1960 Willner filed a fifth application with the Appellate Division, which application was denied without opinion.

The present petition further alleged that Willner has been a member in good standing of the New York Society of Certified Public Accountants and of the American Institute of Accountants since 1951 and that he has been admitted to practice before the Tax Court and the Treasury Department since 1928. Petitioner alleged that in connection with his hearings before the Committee on his 1937 application he was shown a letter containing various adverse statements about him from a New York attorney; that a member of the Committee promised him a personal confrontation with that attorney; but that the promise was never kept. Petitioner also alleged that he had been involved in litigation with another lawyer who had as his purpose "to destroy me"; that the secretary of the Committee was taking orders from that lawyer and that two members of the Committee were "in cahoots" with that lawyer.

The Appellate Division denied the petition without opinion and denied leave to appeal to the Court of Appeals. Willner thereupon sought leave to appeal to the Court of Appeals and in an affidavit in support of his motion stated, "I was never afforded the opportunity of confronting my accusers, of having the accusers sworn and cross examining them, and the opportunity of refuting the accusations and accusers."

The Court of Appeals granted leave to appeal and the Clerk of that Court obtained from the Clerk of the Appellate Division the file in the case. Willner, in his brief before the Court of Appeals, argued he had been denied his constitutional rights in that he had been denied confrontation of his accusers and that, in spite of the repeated attempts, he could not be sure of the Committee's reasons for refusing to certify him for admission. The Court of Appeals, after oral argument, affirmed the order without opinion. 11 N. Y. 2d 866, 182 N. E. 2d 288. Thereafter, at Willner's request, the Court of Appeals amended its remittitur to recite that

> "Upon the appeal herein there was presented and necessarily passed upon a question under the Constitution of the United States, viz: Appellant contended that he was denied due process of law in violation of his constitutional rights under the Fifth and Fourteenth Amendments of the Constitution. The Court of Appeals held that appellant was not denied due process in violation of such constitutional rights."

We granted certiorari, 370 U. S. 934.

The issue presented is justiciable. "A claim of a present right to admission to the bar of a state and a denial of that right is a controversy." *In re Summers,* 325 U. S. 561, 568. Moreover, the requirements of procedural due process must be met before a State can exclude a person from practicing law. "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, 238–239. As the Court said in *Ex parte Garland,* 4 Wall. 333, 379, the right is not "a matter of grace and favor."

We are not here concerned with grounds which justify denial of a license to practice law, but only with what procedural due process requires if the license is to be withheld. This is the problem which Chief Justice Taft adverted to in *Goldsmith* v. *Board of Tax Appeals,* 270 U. S. 117, involving an application of a certified public accountant to practice before the Board of Tax Appeals. Chief Justice Taft writing for the Court said:

> "We think that the petitioner having shown by his application that, being a citizen of the United States and a certified public accountant under the laws of a State, he was within the class of those entitled to be admitted to practice under the Board's rules, he should not have been rejected upon charges of his unfitness without giving him an opportunity by notice for hearing and answer. The rules adopted by the Board provide that 'the Board may in its discretion deny admission, suspend or disbar any person.' But this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." *Id.,* p. 123.

We have emphasized in recent years that procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. See *Greene* v. *McElroy,* 360 U. S. 474, 492, 496–497, and cases cited.[2] That view has been taken by several state courts when it comes to procedural due process and the admission to practice law. *Coleman* v. *Watts,* 81 So. 2d 650; *Application of Burke,* 87 Ariz. 336, 351 P. 2d 169; *In re Crum,* 103 Ore. 296, 204 P. 948; *Moity* v.

---

[2] Cf. *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, where only "the opportunity to work at one isolated and specific military installation" was involved. *Id.,* at 896.

*Louisiana State Bar Assn.*, 239 La. 1081, 121 So. 2d 87. Cf..*Brooks* v. *Laws*, 208 F. 2d 18, 33 (concurring opinion). We think the need for confrontation is a necessary conclusion from the requirements of procedural due process in a situation such as this. Cf. *Greene* v. *McElroy, supra; Cafeteria Workers* v. *McElroy*, 367 U. S. 886.

This result. is sought to be avoided in several ways. First, it is said that the Committee's action is merely advisory, that it is an investigator not a trier of facts, since under § 90 of the Judiciary Law it is the Appellate Division that ultimately must be convinced of an applicant's good character. The answer is that "[u]nless otherwise ordered by the Appellate Division" (New York Rules of Civil Practice, Rule 1 (d)), a favorable certificate from the Committee is requisite to admission by the Appellate Division; and where, as here, the Appellate Division has held no hearings of its own to determine an applicant's character, the role of the Committee is more than that of a mere investigator.

Second, it is said that petitioner has sought relief too late. But the Court of Appeals did not reject his petition on that ground. Instead, it stated that it "necessarily" ruled on the constitutional issue "presented." We can only conclude that the Court of Appeals would have found it "unnecessary" to pass. upon any constitutional question if under state law some other ground had existed for denying petitioner relief. See *Cincinnati Packet Co.* v. *Bay*, 200 U. S. 179, 182; *Lynumn* v. *Illinois*, .372 U. S. 528, 535–536.

Third, it is said that the record shows that petitioner was not rejected on the basis of *ex parte* statements but on the basis of his own statements to the Committee. If the Court of Appeals reached this conclusion, the only constitutional question which was presented and which it could have "necessarily" passed on was whether petitioner was denied due process by not being informed of and

allowed to rebut the bases for either the Committee's or the Appellate Division's failure to find his good character. It does not appear from the record that either the Committee or the Appellate Division, at any stage in these proceedings, ever apprised petitioner of its reasons for failing to be convinced of his good character. Petitioner was clearly entitled to notice of and a hearing on the grounds for his rejection either before the Committee or before the Appellate Division. *Goldsmith* v. *Board of Tax Appeals, supra;* cf. *In re Oliver,* 333 U. S. 257, 273. There seems no question but that petitioner was apprised of the matters the Committee was considering.

> "But a 'full hearing'—a fair and open hearing—requires more than that. . . . Those who are brought into contest with . . . Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command." *Morgan* v. *United States,* 304 U. S. 1, 18–19.

Petitioner had no opportunity to ascertain and contest the bases of the Committee's reports to the Appellate Division, and the Appellate Division gave him no separate hearing. Yet, "[t]he requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps." *Id.,* at 20. Cf. *Gonzales* v. *United States,* 348 U. S. 407, 414.

If the Court of Appeals based its decision on the ground that denying petitioner the right of confrontation did not violate due process, we also hold that it erred for the reasons earlier stated. But because respondent has asserted that the *ex parte* statements involved in this case played no part in any of the decisions below, we have searched the record to assess this contention. It shows that the

Committee had several complaints against petitioner. The various intra-Committee memoranda and reports to the Appellate Division contained in this record support the conclusion that the Committee did in fact rely on these complaints, at least to some extent, in reaching its determinations. And there is no indication in the record that any of the Appellate Division's orders were based solely on petitioner's own statements. Thus, despite respondent's assurances that the Committee never bases its final action on *ex parte* statements, we cannot say that the Court of Appeals erred in concluding that this constitutional question was "necessarily" decided.

We hold that petitioner was denied procedural due process when he was denied admission to the Bar by the Appellate Division without a hearing on the charges filed against him before either the Committee or the Appellate Division.

*Reversed.*

MR. JUSTICE GOLDBERG, whom MR. JUSTICE BRENNAN and MR. JUSTICE STEWART join, concurring.

I concur in the opinion and judgment of the Court believing, as I do, that under all of the circumstances here the petitioner was denied procedural due process which the Constitution demands be accorded by the States to applicants for admission to the bar. No conflict exists between constitutional requisites and exaction of the highest moral standards from those who would practice law. See *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, 238–239. Certainly lawyers and courts should be particularly sensitive of, and have a special obligation to respect, the demands of due process. This special awareness, however, does not alter our essential function or duty. In reviewing state action in this area, as in all others, we look to substance, not to bare form, to de-

termine whether constitutional minimums have been honored.

The New York admissions procedures described in the opinion of the Court are fairly characteristic of those prevalent throughout the country. In general, they contemplate that an applicant for admission who has successfully passed the bar examination will file an application before a court-appointed committee of lawyers which conducts an inquiry into his moral character and on the basis thereof recommends the grant or denial of admission by the court. Committee proceedings are often informal and, for the protection of the candidate, are generally not publicized. Committee members are usually unpaid and serve in fulfillment of their obligation to the profession and as officers of the court. They perform an indispensable and very often thankless task. While the vast majority of candidates are approved without difficulty, in exceptional cases, such as this, either information supplied by the applicant himself or material developed in the course of the committee's investigation gives rise to questions concerning the applicant's moral character.

The constitutional requirements in this context may be simply stated: in all cases in which admission to the bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence. As I understand the opinion of the Court, this does not mean that in every case confrontation and cross-examination are automatically required. It must be remembered that we are dealing, at least at the initial stage of proceedings, not with a court trial, but with a necessarily much more informal inquiry into an applicant's qualifications for admission to the bar. The circumstances will determine the necessary limits and incidents implicit in the concept of a "fair" hearing. Thus, for

example, when the derogatory matter appears from information supplied or confirmed by the applicant himself, or is of an undisputed documentary character disclosed to the applicant, and it is plain and uncontradicted that the committee's recommendation against admission is predicated thereon and reasonably supported thereby, then neither the committee's informal procedures, its ultimate recommendations, nor a court ruling sustaining the committee's conclusion may be properly challenged on due process grounds, provided the applicant has been informed of the factual basis of the conclusion and has been afforded an adequate opportunity to reply or explain. Of course, if the denial depends upon information supplied by a particular person whose reliability or veracity is brought into question by the applicant, confrontation and the right of cross-examination should be afforded. Since admission to the bar is ultimately a matter for the courts, there is ample power to compel attendance of witnesses as required.

Application of these principles to this case leads me to concur in the Court's opinion and judgment. The record here, to say the least, is complex, muddled, and in many respects unsatisfactory. We are dealing with an applicant who first applied for admission 25 years ago. Comparison of his applications with facts later confirmed by the petitioner himself suggests a lack of complete candor in dealing with the committee. While this failure to disclose, along with other more recently occurring matters here present, might have supported a refusal to certify the petitioner's character, there are present additional elements which indicate that the committee may have been motivated in its conclusion by charges made against the petitioner by certain informants, the evaluation of which would necessarily depend upon estimates of credibility. The record is not clear whether the petitioner actually requested an opportunity to confront and cross-examine

these informants at the time of his first application in the late 1930's. It is plain, however, that he now seeks that opportunity and there is no indication that the state court considered the claim to be untimely. Moreover, at no point are we or the petitioner specifically advised by any finding of the committee or of the state courts as to the precise basis of denial to him of either his original or renewed applications for admission or his requests for reconsideration thereof. In substance, therefore, as the case reaches us, we are confronted with circumstances which, upon sifting, may or may not support the denial of admission to the bar. And our difficulties are compounded by the amended remittitur of the New York Court of Appeals which is fairly susceptible to the reading given it in the Court's opinion—that confrontation is not constitutionally required in a bar admission case such as this in which the character committee appears to have relied, at least in part, for its adverse recommendation upon contradicted information supplied by informers whose credibility was challenged by the applicant. The net result to me, therefore, is that this case, whatever it started out to be, has become one in which due process requires either *de novo* consideration of the petitioner's application or an orderly sorting out of the issues and an articulated and constitutionally grounded decision on the merits of the petitioner's claims to admission. New York procedures are, I am sure, adequate to effect the proper result upon remand.

MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK joins, dissenting.

The majority and concurring opinions bear witness to the difficulty the Court has had divining from this messy and opaque record whether the case in truth presents a substantial federal question. Obviously much influenced by the amended remittitur of the Court of Appeals, the

Court considers that the state courts have held that an applicant for membership in the New York Bar may be denied admission without having had the opportunity at any stage to confront persons whose unfavorable information may have led the Character Committee to refuse to certify the candidate's "character and fitness."

It would take a great deal to persuade me that either of these experienced and respected New York courts has been guilty of such a questionable constitutional holding. In light of the record, I do not believe that either the Court of Appeals' affirmance or its amended remittitur by any means points to the interpretation which this Court now places on the action of that court. In my view the more reasonable, and correct, interpretation is that the Court of Appeals simply held that, in light of what had gone before,[1] the Appellate Division's refusal to

---

[1] The chronology of events was in substance this: The Appellate Division, upon the Character Committee's refusal to certify the applicant, originally denied admission in 1938. Refusal of certification had followed petitioner's appearance before the Committee at which, among other things, he had been informed and interrogated about complaints received from two lawyers, Wieder and Dempsey. (Wieder charged that petitioner had not completed his required "clerkship," having been discharged from Wieder's office for unsatisfactory performance before the end of the clerkship period. Dempsey's complaint related to certain litigation involving petitioner and one of Dempsey's clients, in which petitioner had been charged with fraud in connection with accountancy services performed for the client.) Apart from these *ex parte* charges, petitioner in his return to the Committee's written questionnaire had (1) stated that he had not been connected with any law offices, although in a later interview he had informed the Committee that he had in fact been employed in Wieder's office for a short time; (2) stated that he had served "no clerkship," although he had subsequently informed the Committee of the filing of a certificate of clerkship with the Court of Appeals in Albany; (3) failed to disclose the aforementioned suit brought against him by Dempsey's client; (4) failed to disclose an annulment suit that had been brought against him by his 16-year-old wife, later

entertain petitioner's last *de novo* application for admission—the eighth proceeding before that court—involved no abuse of its discretion under Rule 1 of the New York Rules of Civil Practice. More particularly, in these prior proceedings no confrontation claim was raised until 1954—some 16 years after the original denial of admission—during which period the matter had already been before the Appellate Division five times (note 1, *supra*).[2]

---

stating that he had omitted this information because "Some people consider it a heinous offense"; and (5) failed to include six other suits or judgments against him among those listed in the questionnaire. The Committee characterized petitioner's demeanor as one of "general evasiveness."

Although he made no contemporary effort to obtain review of the original denial of admission, petitioner thereafter sought to attack it before the Appellate Division on four successive occasions during the years 1943–1951—all to no avail. Again, he sought no review of any of these proceedings, one of which involved a *de novo* hearing before the Character Committee, and in none does he appear to have raised the confrontation claim now made here.

Lack of confrontation seems to have been asserted for the first time in 1954, when petitioner again unsuccessfully moved the Appellate Division for leave to file a *de novo* application for admission. Leave to appeal to the New York Court of Appeals, sought then for the first time, was denied, and this Court in turn denied certiorari. 348 U. S. 955.

Finally in 1960 and 1961 petitioner twice more unsuccessfully moved the Appellate Division for leave to file a *de novo* application for admission, the latter proceeding being the one presently before the Court.

[2] In his petition initiating the present proceeding petitioner alleged that during the interviews held in connection with his original application the Chairman of the Character Committee promised him "a confrontation." The record, however, discloses no such episode. Indeed at the third Committee hearing in 1938 petitioner was asked whether he had anything further to present and he responded simply by referring to one of the affidavits submitted on his behalf purporting to refute the Wieder charge (note 1, *supra*). He made no request for confrontation.

So interpreting the Court of Appeals' action, I do not think this case presents a substantial federal question—no more so than did the petition for certiorari which was filed here in 1955, raising this same confrontation question in almost the same context of prior proceedings, and which this Court then denied. *In re Willner*, 348 U. S. 955.

Now that plenary consideration has shed more light on this case than in the nature of things was afforded at the time the petition for certiorari was acted upon, I think the proper course is to dismiss the writ as improvidently granted.