JUSTICE TRIEWEILER,
dissenting:
I dissent from the opinion of the majority. The history of this matter indicates that the State Bar of Montana Committee on Character and Fitness decided early on not to certify the petitioner for admission to the Bar, and then over a long period of time groped unsuccessfully for reasons until it found one which petitioner was never given an opportunity to defend against. From the beginning this was a rejection looking for a reason.
The petitioner was denied the right to practice law in Montana for making inconsistent statements about his prior involvement in a drug transaction. However, any reasonable interpretation of his statement compels the conclusion that they were in no way inconsistent.
The petitioner was also denied admission for stating that he had never used drugs, when in fact a ten-year-old Nebraska Supreme Court decision refers to earlier use of marijuana. However, petitioner was never given the slightest prior indication that his immaterial statement regarding the use of drugs was one of the possible bases under consideration by the Committee for rejecting his application. He was asked no questions about that statement and never given an opportunity to reconcile that statement with the Supreme Court decision. How can the majority possibly conclude under those circumstances that he received adequate notice of the complaint against him and an opportunity to respond?
*359 In order to fully understand just how unfair this result is to the petitioner, it is necessary to set out the chronology of events that led to the rejection of his application.
Paul Matt, III, was admitted to the practice of law in the state of Nebraska in 1971. He was admitted to practice in the state of Colorado in 1987.
At the time of his application for admission to practice in the state of Montana on February 28, 1990, he had been practicing law for 19 years, except for the period of his suspension, and had never had a client grievance filed against him in either state.
With his application, Matt submitted letters attesting to his good moral character from two judges, eight attorneys, and four non-attorneys, including two former clients. The attorneys included close working associates and former employers. Although one former employer stated that his firm declined to hire Matt on a full-time basis because of his prior disciplinary experience, even he attested to Matt’s good moral character. In all the voluminous documentation that was submitted to the Committee on Character and Fitness, no person other than the Committee members questioned Matt’s honesty, integrity, or competency to practice law.
In March 1980, Matt had been charged with conspiracy to deliver cocaine. However, he at no time admitted guilt and was never convicted of any crime. After completion of a pretrial diversion program, those charges against him were dismissed. As a result of those charges, Matt was investigated by the Disciplinary Review Board of the Nebraska State Bar Association. After its investigation, that board recommended to the Nebraska Supreme Court that it issue a reprimand. That recommendation, however, was rejected by the Supreme Court and Matt was suspended from the practice of law in Nebraska from December 17, 1982, until he was reinstated on January 26, 1984.
In his application to practice in Montana, Matt reported the previous disciplinary proceeding and made a general statement of the basis for those proceedings. A Committee credit check on Matt also disclosed a prior lien by the federal government for income taxes that were due. Based on these two pieces of information, the Committee wrote to Matt on May 7, 1990, and advised him that the Committee had serious concerns about the disciplinary action in Nebraska and his neglect of financial responsibility. It advised him that for that reason the Committee could not certify him as fit to practice law in *360 Montana. It also advised him that if he wished, he could appear personally before the Committee.
Matt exercised his right to a hearing and it was conducted on June 27, 1990. At that time, he was advised that the Committee was primarily concerned about the primary disciplinary action in Nebraska, the tax lien, and other matters that it would bring up later.
Matt explained that the tax liens were imposed based on an agreement with the IRS that he initiated himself, and that they had been fully satisfied and discharged in 1988. He also provided the Committee with copies of the lien releases.
He was questioned about his prior involvement in two civil lawsuits. He explained that one had been resolved and the other had been dismissed without any settlement.
When he was asked about the basis for the disciplinary action in Nebraska, he admitted that a friend asked him to help her find drugs; that he made a call to a person who could provide her with drugs; and that he made another call to his friend to refer her to the seller. That was the essence of what he did wrong. Whether there were two calls involved, or three calls involved, is really immaterial.
Matt explained that after being charged he was put in a pretrial diversion program, that he completed it successfully, and that the charges against him were dismissed. He also explained that after investigation the disciplinary committee of the Nebraska Bar recommended that he be reprimanded by the Supreme Court, but that the Supreme Court rejected that recommendation and suspended him for a year. He was asked by the Committee to speculate why the Supreme Court did not follow the Nebraska Committee’s recommendation, and he speculated that it may have been because of hard feelings on the part of the chief justice with whom he had previously had an unpleasant adversarial relationship as an attorney.
At the first hearing, Matt was also questioned about a dispute that occurred with the purchaser of a home which he was renting. Apparently he had 30 days remaining on his rental agreement and the purchaser wanted him to move out immediately after she purchased the building. He refused to do so.
Following that hearing, on August 1, 1990, the Committee wrote to Matt and notified him that pursuant to Section 4(b) of the Committee’s rules, he was denied certification as fit to practice law in Montana. The Committee gave the following reasons:
*361 Section 3(c)(1) Unlawful conduct, as evidenced by the conspiracy to deliver cocaine charge.
Section 3(c)(3) Making of false statements including omissions as evidenced by your omission regarding the above charge when being hired at Branny, Hillyard and Kudla, and also by the misinformation you gave concerning your relationship with Judge Krivosha, and
Section 3(c)(13) Disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction as evidenced by your suspension in Nebraska.
In other words, the Committee’s original decision was based on its conclusion that when Matt responded to their request that he speculate about the reason for his suspension by the Nebraska Supreme Court, he misrepresented that he had an unpleasant prior adversarial relationship with its chief justice. They also concluded that when he was subsequently hired to work for a law firm in Colorado he made false statements by failing to advise that firm of his prior disciplinary experience in Nebraska. Finally, the Committee concluded that it was appropriate to continue punishing Matt for the error in judgment which led to his previous punishment by the Nebraska Supreme Court ten years earlier.
Matt was advised that under the Committee’s rules he could request reconsideration and would be granted a formal hearing. He made that request and the formal hearing was conducted on October 11, 1990.
At the second hearing, Matt introduced the complete file of the divorce case in which he and the former chief justice represented opposing parties. The records disclose a long, difficult struggle by Matt to discover documents which related to the financial condition of Krivosha’s client. Between 30 and 40 letters were exchanged during Matt’s effort to discover the information. Finally, he moved to compel discovery of the documents. Krivosha’s response to that motion termed it frivolous and harassing. However, the motion was ultimately granted and the divorce was resolved in a manner favorable to Matt’s client. It was only three years later that the question of Matt’s suspension came before the Nebraska Supreme Court with Matt’s former adversary then sitting as chief justice. It is not surprising that when invited by the Committee to speculate about the reason why the Supreme Court departed from custom and ignored *362 its own disciplinary board’s recommendation, Matt gave the answer that he did.
Matt also explained the circumstances under which he went to work for the Branny, Hillyard firm. At that time, he had moved to Colorado where he was studying to take the Colorado bar examination. He did not apply for a position as an attorney with the Branny, Hillyard firm, but only a clerkship. By then he had already been reinstated in Nebraska. He did not feel that his prior disciplinary proceeding was relevant to his application because he was not being considered for a position as a practicing attorney.
Nearly one year later, in October 1987, he was notified that he successfully passed the bar, and at that point one of the partners in the firm offered him a regular job. Before accepting the job, he explained to that partner that he had been involved in the prior disciplinary proceeding in Nebraska and submitted a memorandum to the entire firm explaining what had happened. As a result of that knowledge, the offer of a job with the firm was withdrawn. However, even though he was not given a position as an associate, he remained with the firm as a clerk for another 14 months. He explained that when he applied for the clerkship position he was not asked about any prior problems and did not feel they were relevant because he was not applying for a position as an attorney.
At the second hearing, he was again examined about the drug transaction. He again explained that he had been requested by a friend to locate drugs for her. He called an acquaintance in another town. Then he called his friend back. His testimony was basically the same as it was at the first hearing. Furthermore, it was not Matt who characterized his series of conversations as “a couple of phone calls. It was the Committee member who questioned him. The point is that he explained the basic essence of the transaction. Whether it involved two or three telephone calls was totally irrelevant.
Following the second hearing, the Committee notified Matt that in addition to the matters with which it was previously concerned, it also wanted to consider the tax lien, the dispute that occurred while he was a tenant, and the two civil lawsuits with which he had been involved as possible bases for denying his certification. Therefore, a third hearing was set for February 13, 1991.
At the third hearing, Matt responded to the additional issues raised by the Committee. He explained that after he moved to Montana he had rented a home with an agreement that he could remain there until March 31. Shortly after the first of March the home *363 was sold and the purchaser wanted him to move out immediately. He objected based on his rental agreement with the prior owner, but as an accommodation to the purchaser, eventually moved out on March 25, nearly a week early.
He pointed out again at the third hearing that the tax liens that had been placed against him in 1984 were not based on an audit, but in response to his voluntary acknowledgment that he owed taxes which he was unable to pay. He immediately entered into an agreement to pay the money in installments and satisfied the terms of the agreement in 1988. He explained that while he had been named a defendant in two civil suits based on business transactions, one had been fully settled to the apparent satisfaction of the parties, and the other had been dismissed, apparently for the reason that it had no merit in the first place.
No mention was ever made at the third hearing regarding the discrepancy in Matt’s earlier testimony about drug use and the contradictory remarks reported in the Nebraska Supreme Court’s decision found at State v. Matt (Neb. 1982), 327 N.W.2d 622. In fact, when the counsel for the Committee indicated that the decision would be made part of the record, she made the following remarks:
I don’t have any further questions at this time, but I do have, going back to discussions we had in the previous hearing, an opinion from the Northwestern Reporter that involves your dismissal from the — or your suspension from the Bar there, in Nebraska. I don’t have any questions to ask you about it, because it doesn’t contain anything that you didn’t tell us about, but I would like to submit a copy of that to the Committee for their file.
... To Paul’s credit, I mean, I think that it pretty much goes along with what he has told the Committee, and it doesn’t give any indication why the Court didn’t go along with the recommendations of the finder of fact, whatever he was called, the special master. [Emphasis added.]
Not only was Matt not given notice that the Nebraska Supreme Court decision would form the basis of the Committee’s finding that he had been untruthful; not only was he denied an opportunity to explain the discrepancy; but he was led to believe, at the only time when he could have refuted the Committee’s finding, that the Committee considered the decision, in all important respects, consistent *364 with his prior testimony. Therefore, Matt offered no further evidence at that time.
On May 22,1991, the Committee found that Matt lacked sufficiently good moral character for admission to the State Bar of Montana and listed three reasons:
1. The Committee found that his version of the number of telephone calls involved in the drug transaction for which he was disciplined in Nebraska was inconsistent by one telephone call with the chronology reported in the Supreme Court’s decision and that he was, therefore, not candid with the Committee.
2. The Committee found that contrary to his testimony on June 27 to the effect that he had not previously used drugs, he had purchased and used marijuana on more than one occasion.
3. The Committee found that when, in response to its invitation, he speculated about why the Nebraska Supreme Court had not followed its own board’s recommendations and blamed Chief Justice Krivosha, his speculation violated Rule 8.2 of the Montana Rules of Professional Conduct. Rule 8.2 provides that:
(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public officer, or of a candidate for election or appointment to judicial or legal office.
After a thorough review of the record, and the incredible series of proceedings conducted by the Committee, I strongly disagree with the Committee’s findings and conclusions.
First, whether Matt had two conversations, three conversations, or twenty conversations with his friend for whom he arranged the purchase of illegal drugs, the number is totally immaterial. The essence of what he did wrong was arrange for a friend to purchase illegal drugs. He admitted that she called him. He admitted that he then contacted someone from whom she could purchase drugs, and that he then called her back to refer her to the seller. Whether there was another call involved makes absolutely no difference, and the fact that Matt may have omitted mentioning a third call over ten years after the fact indicates nothing to me about any intention on his part to mislead the Committee.
Second, the Committee had no right to reject Matt’s application on the basis of a misstatement which he was never even advised was the subject of concern to the Committee. The Committee’s rules provide *365 for notice; they provide for hearing; and they provide for reconsideration after an applicant is notified of the reasons for his rejection. In this case, Matt availed himself of every opportunity to be heard, and every time he was advised of another reason that the Committee was considering for rejecting his application, he was able to offer satisfactory evidence that the reason had no merit. Apparently frustrated by this process, the Committee simply decided to convict him of something which he had no prior notice of and no opportunity to rebut. How does the majority reconcile this with its prior decision in the Matter of Kenneth J. Pedersen (Mont. 1991) 250 Mont. 325, 48 St.Rep. 988, wherein it stated that:
Those bodies charged with investigating and making decisions upon an applicant’s character and fitness to practice law in a particular jurisdiction must afford the applicant adequate due process of law.... The court added that the right to engage in the practice of law is not and should not be a matter of grace and favor. Willner v. Committee on Character and Fitness (1963), 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224. In a concurring opinion in Willner, Mr. Justice Goldberg discussed the due process requirement in these cases:
The constitutional requirements in this context may be simply stated: in all cases in which admission to the Bar is to be denied on the basis of character, the applicant, at some stage of the proceedings prior to such denial, must be adequately informed of the nature of the evidence against him and be afforded an adequate opportunity to rebut this evidence.
Willner, 373 U.S. at 107. [Emphasis added.]
Matter of Pedersen, [250 Mont. 325,] 820 P.2d 1291, 48 St.Rep. at 989-90.
In this case, Matt was given no notice that a basis for denial of his application would be his statement that he had never consumed drugs, and he was afforded no opportunity to explain or reconcile the apparent contradiction in that statement and the statements made by the Nebraska Supreme Court. Denying his application on the basis that he had been untruthful to the Committee, therefore denied him due process of the law.
Finally, I find it simply preposterous that the Committee invited Matt to speculate about why the Nebraska Supreme Court rejected its disciplinary committee’s recommendation, and then when he did *366 so, used that speculation against him. The denial of his application on that basis is wrong for several reasons. First of all, he merely-expressed an opinion, he did not make a statement that he knew to be false or with reckless disregard of the truth. Second, based upon the documentation subsequently provided by Matt, and Krivosha’s apparently misinformed denial that he had ever even handled a case against Matt, it would appear that his opinion had some basis in fact. By no stretch of the imagination did the opinion which the Committee expressly solicited violate Rule 8.2 of the Montana Rules of Professional Conduct.
For these reasons I dissent from the majority opinion. I would reverse the decision of the Committee on Character and Fitness. Whether Matt had the burden of proof or not, he has proven by more than a preponderance of the evidence that he is possessed of satisfactory moral character to practice law in the state of Montana.
A thorough review of this record can lead to only one conclusion. That is that both the Committee on Character and Fitness, and the majority of this Court, are bent on punishing Matt for an indiscretion committed over ten years ago — one for which he has already been punished and forgiven by the state of Nebraska and the state of Colorado. It is regretful that this applicant can never be forgiven in the state of Montana.