# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-SA-01610-SCT

*IN RE APPLICATION OF EARL STEPHEN
DEAN: EARL STEPHEN DEAN*

*v.*

*MISSISSIPPI BOARD OF BAR ADMISSIONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2006 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EARL STEPHEN DEAN (PRO SE) |
| ATTORNEYS FOR APPELLEE: | MARY JO WOODS |
| | HAROLD EDWARD PIZZETTA, III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 01/17/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Board of Bar Admissions issued an adverse determination as to the character and fitness of applicant Earl Stephen Dean.  Dean appealed the Board decision to the Chancery Court of Hinds County, which affirmed the Board's decision.  Dean appeals the chancery court judgment, asserting that the Board's decision was not based on sufficient evidence and that it violated his constitutional rights of free speech and due process.

## FACTS AND PROCEDURAL HISTORY

¶2.	Appellant Earl Stephen Dean received his law degree from Thomas Cooley Law School in Lansing, Michigan, in January 2001. Dean filed for admission to the Mississippi Board of Bar Admissions ("Board") on March 21, 2002. The Committee on Character and Fitness ("Committee") held a hearing to consider Dean's application on August 23, 2002. The Committee submitted to the Board its recommendation to deny Dean's application. After reviewing the application, on November 14, 2002, the Board remanded Dean's application to the Committee for production of findings of fact and conclusions of law. The Committee submitted a substituted opinion, which again recommended denial, and accordingly, the Board denied Dean's application on January 30, 2003.

¶3.	Dean petitioned the Board to review its decision pursuant to the Rules Governing Admission to the Bar, Rule 8, section 9. In April 2003, the Board held a hearing where Dean presented his arguments as to why the Board should reverse its previous decision. The hearing was made public at Dean's request, and a number of Dean's supporters attended. Before the Board issued a decision, in August 2003, Dean filed a petition for writ of mandamus with this Court. The Board entered an Order on October 2, 2003, staying further action on Dean's application pending the issuance of this Court's decision. This Court entered an Order on November 26, 2003, dismissing Dean's petition as untimely since he failed to exhaust the remedies available from the Board.

¶4.	Due to the complexity of the case, the Board again remanded the case to the Committee. The Committee conducted a second hearing on August 25, 2005. The

Committee found that Dean exhibited conduct evidencing: (1) dishonesty; (2) irresponsibility in business and professional matters; (3) engagement in the unauthorized practice of law; (4) violation of the reasonable rules of conduct governing many of his activities; (5) failure to exercise substantial self-control; and (6) mental and emotional instability. On those grounds the Board again denied Dean's application on September 22, 2005.

¶5.    Dean filed a petition on October 3, 2005, to the Board to reconsider its second denial pursuant to Rule 8, section 9, but withdrew his petition on October 19, 2005. On October 24, 2005, Dean appealed the Board's decision to the Hinds County Chancery Court, which affirmed the Board's denial of Dean's application on August 23, 2006. On September 18, 2006, Dean appealed the chancery court decision to this Court.

## DISCUSSION

¶6.    This Court, possessing exclusive power to admit persons to practice as attorneys in the courts of this State, adopted the Rules Governing Admission to the Mississippi Bar ("Bar Rules") on November 26, 1979. *Miss. Bd. of Bar Admissions v. Applicant F*, 582 So. 2d 377, 378-379 (Miss. 1991) (citing Miss. Code Ann. § 73-3-2 (1989, Recompiled)). Bar Rules, Rule 8, section 10, provides that, on appeal of an adverse Board decision to the chancery court, "[t]he Board's decision may be reversed by the Chancery Court only if the applicant proves by a preponderance of the evidence in the record before the Board that denial of his application was arbitrary, capricious, or malicious." This is the familiar standard used in judicial review of other administrative licensing decisions in this state. *Applicant F*, 582 So. 2d at 379 (citing *Melody Manor Convalescent Ctr. v. Miss. State Dep't*

3

*of Health*, 546 So. 2d 972, 974 (Miss. 1989); *Mainstream Savings & Loan Ass'n v. Washington Fed. Savings and Loan Ass'n*, 325 So. 2d 902, 903 (Miss. 1976)). This Court applies the same standard mandated to the chancery court; however, it reviews the Board decision de novo. *Applicant F*, 582 So. 2d at 379. Further, this Court affords great deference to an agency's interpretation of statutes and rules which govern its operation. *Hayes v. Pub. Employees Ret. Sys.*, 960 So. 2d 471, 473 (Miss. 2007) (citing *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (Miss. 2003)). Therefore, this Court will reverse the Board's decision only upon finding that it was "arbitrary, capricious or malicious" in that it was unsupported by substantial evidence or violated a constitutional right of the party. *See Hayes* 960 So. 2d at 473-74; *Applicant F*, 582 So. 2d at 379.

¶7. The Bar Rules prescribe the procedure for admission to the Mississippi Bar, including the guidelines for satisfying the character and fitness portion of the admission requirements. Rule 8, section 6, provides the standards for disqualification of an applicant. It reads:

> The Committee shall recommend that the applicant not be admitted to practice law in Mississippi if, in the judgment of the Committee, the applicant has exhibited conduct substantially evidencing an inclination:
>
> A.   To be dishonest;
> B.   To take unfair advantage of others;
> C.   To be disloyal to those to whom loyalty is legally owed;
> D.   To be irresponsible in business or professional matters;
> E.   To support or advocate the overthrow of the government of the United States by force;
> F.   To unlawfully engage in the practice of law while not being so licensed;
> G.   To violate reasonable rules of conduct governing activity in which applicant has engaged;

> H. To fail to exercise substantial self-control, including excessive and continuing violation of traffic rules, the improper use of drugs, and the excessive use of alcohol;
>
> I. To be mentally or emotionally unstable to the extent that applicant is not suited for the practice of law.

Rule 8, § 6. "The burden is on the applicant to establish to the reasonable satisfaction of a majority of the Committee that he possesses such character and qualifications as to justify his admission to the Bar and qualify him to perform the duties of an attorney and counselor at law." Rule 8, § 7.

¶8. The Committee determined Dean had exhibited disqualifying conduct from Rule 8, section 6, including: dishonesty (section 6(A)); irresponsibility in business or professional matters (section 6(D)); unauthorized practice of law (section 6(F)); violation of reasonable rules of conduct (section 6(G)); failure to exercise self-control (section 6(H)); and mental and emotional instability (section 6(I)). Dean raised five issues refuting the Board's finding.[1]

## I. Whether Applicant Was Dishonest with the Board.

¶9. Dean asserts that the Board's finding that he was dishonest was not supported by the record. The Board responds that this issue is procedurally barred, alleging that Dean failed to raise the issue in the trial court. This Court finds that Dean did raise this issue in the trial court. He began the first issue in his trial court brief refuting the various examples upon which the Board relied to affirm the Committee's finding of dishonesty. Also, in Dean's reply brief to the trial court, he titled a sub-issue "Applicant Has Not Exhibited a Trait for

---

[1]Of the Board's six findings, Dean specifically addresses only two, dishonesty and mental emotional instability.

5

Dishonesty" and proceeded again to discuss the basis for the Board's finding that he was dishonest. Thus, this Court will consider Dean's arguments concerning the sufficiency of evidence for the finding that he was dishonest.

¶10. The Committee notes four incidents which support its finding of dishonesty. Three of the four are false answers to questions on the Bar application.

¶11. Question number 18 on the Mississippi Bar application asked "[h]ave you ever been suspended, placed on disciplinary probation, expelled or requested to resign from high school, college, university or law school, or otherwise subjected to discipline by any such school or other institution or requested or advised by any such school or institution to discontinue your studies therein for disciplinary reasons?" The Board alleges that Dean failed to disclose he had been placed on probation by Thomas Cooley Law School for failing to disclose a prior criminal conviction. Dean conceded at the Committee hearing that he was placed on disciplinary probation for a DUI. Dean contends that his voluntary disclosure of the DUI to the Thomas Cooley Law School before they discovered the conviction demonstrates a lack of intentional deceit. This contention is misplaced. The Board's finding did not concern Dean's dishonesty with Thomas Cooley Law School, but rather Dean's dishonesty in his failure to properly disclose this information on his Mississippi Bar application.

¶12. Also, in response to question number 10, which instructs the applicant to "[s]tate the name. . . . for every law school which you have attended," Dean responded by listing only Thomas Cooley Law School. However, Dean later conceded that he also attended William

6

Howard Taft University Law School. Dean now contends that the omission of the correspondence course he took at William Howard Taft is irrelevant to his character since the correspondence course was not associated with any misconduct. Dean's argument is irrelevant. Regardless of whether the correspondence course in and of itself is associated with any misconduct, the failure to disclose attendance at another school supports the finding that Dean was dishonest for omitting requested information on the Mississippi Bar application.

¶13. The third instance of dishonesty in the Bar application involved question number 28, which asked "[h]ave you ever been discharged, asked to resign, or resigned from any employment for reasons other than career advancement or full-time schooling?" Dean answered in the negative. The Board found that Dean was terminated from each of the three insurance companies – Illinois Mutual, Midland National Life Insurance, and Massachusetts Mutual Life Insurance – which he listed as employers. Dean disputes his status as an employee, claiming that he was an independent contractor; thus, the question was inapplicable to him. To the contrary, Dean listed the three insurance companies as employers on his application and stated that he had never been terminated by any of the three. Each of the three insurance companies submitted documentation stating that in fact he was terminated from employment.

¶14.    Further, the Board found that Dean was dishonest regarding his actions in ***Dean v. Byerley***, No. 05-1155, 2005 U.S. App. LEXIS 17830 (6th Cir. Aug. 17, 2005).[2] The Board found that Dean gave false testimony and made inconsistent statements during the court proceedings as well as before the Committee. In ***Byerley***, Dean picketed at the home of Thomas Byerley, a Michigan Bar official. *Id.* at *3. Dean alleged that Byerley threatened him for picketing at Byerley's home. *Id.* Dean sued for damages, claiming that as a result of Byerley's threats, he was afraid to continue exercising his constitutional rights under the First Amendment. *Id.* at *11. However, Byerley entered evidence that on the same day after leaving his house, Dean continued to picket a second house, the residence of John Nussbaumer, a dean at Thomas Cooley Law School. ***See Id.*** at*14.

¶15.    The Board states that while Dean denied at trial having picketed the second house, he conceded his actions to the Sixth Circuit. With regard to Dean picketing the second house, the Sixth Circuit stated "Dean accurately notes [on appeal] that the house he picketed did not belong to a state actor and that he was therefore at no risk of having his free-speech rights chilled." *Id.* at *14-15.

¶16.    Similarly, Dean made inconsistent statements to the Committee. The Board contends Dean effectively admitted in a letter to the Committee to picketing Nussbaumer's residence

---

[2] Following a conversation with Michigan Bar officials which left Dean concerned about the success of his application to the Michigan Bar, Dean filed a pro se 42 U.S.C.S. section 1983 complaint against Thomas K. Byerley, counsel for the Michigan Bar who oversees the Bar's Character and Fitness Department, alleging: (1) violation of his First and Fourteenth Amendment rights by threatening arrest or retaliation; (2) assault; and (3) libel. The jury rejected Dean's claims. Dean appealed. The Sixth Circuit affirmed the trial court.

on the day in question, March 27, 2001. Nussbaumer stated in a letter, written on March 27, 2001, "I personally observed Mr. Dean and his two hired hands picketing my house this morning." Dean's letter to the Committee stated in pertinent part:

> . . . . Dean Nussbaumer's letter dated 3/27/01 referring to my non targeted picketing of his homes stated among other things that I was very courteous (Exhibit H). (sic) He correctly stated that I paid two people to accompany me. My reason for doing so was that I wanted witnesses on my behalf present at all times.

When Dean was asked in the August 25, 2005, Committee hearing whether the statement in the letter was an admission that Dean picketed Nussbaumer's house on March 27, 2001, Dean responded "[i]t would have been if I had the date correct." Dean acknowledged that he had paid two people to accompany him in picketing Nussbaumer's house but failed to comment on Nussbaumer's alleged inaccuracy of the picketing date, an issue which was significant during the trial and the appeal. Despite his previous concession by letter, Dean denied during the Committee hearing on August 25, 2005, that he picketed Nussbaumer's home on March 27, 2001.

¶17. Dean failed to offer evidence in either the Board hearing or the trial court hearing to negate the Board's finding that he was dishonest. There was sufficient evidence by which the Committee could have found Dean to exhibit conduct substantially evidencing an inclination to be dishonest. Consequently, with regard to the finding of dishonesty, Dean has failed to show the Board's denial of his application was arbitrary, capricious, or malicious.

**II. Whether the Board Violated Applicant's Right to Free Speech.**

9

¶18.    Dean contends that the chancery court affirmed the Board, which "put [his] First Amendment practices and personal views on trial." Dean asserts the Board violated his First Amendment right to free speech by holding against him his petition for redress of grievances. Dean alleges the Board retaliated against him due to his having filed various lawsuits, including two against the Mississippi Board of Bar Admissions.

¶19.    The Committee explained during the hearing that its concern was the validity of the suits and Dean's conduct related to dealings with the legal system.  The Committee based its determination of misconduct on the following findings: (1)  Dean offered false testimony to the Committee regarding the events underlying the *Dean v. Byerley* case;  (2) five days prior to the committee hearing, Dean made threats to David Storlie, a witness scheduled to testify at the Committee hearing who was General Counsel of Illinois Mutual, a former employer of Dean's;  and (3) Dean admitted to engaging in the unauthorized practice of law in numerous lawsuits.

¶20.    The Committee further found Dean's pattern of litigation indicated that Dean has a habit of filing meritless and retaliatory suits. On Dean's appeal of the jury verdict rejecting his claims, the Sixth Circuit found Dean's arguments to be "improbable" with "no meaningful authority." *Dean v. Byerley*, No. 05-1155, 2005 U.S. App. LEXIS 17830 at *7 (6th Cir. Aug.17, 2005) ("Not only is it improbable that a district court's reliance on model jury instructions would amount to plain error but Dean also has offered no meaningful authority to show that the use of these model instructions was in fact mistaken"). Dean sued two employees of the Missouri Conservation Commission after the Commission obtained a

10

preliminary injunction prohibiting Dean from improving a road leading to his partially constructed home.[3]  The trial court granted summary judgment for the Commission.  The Eighth Circuit Court of Appeals rejected as "frivolous" Dean's argument that his Fourth Amendment rights had been violated.  *Dean v. Duckworth*, 99 Fed. Appx. 760, 761 (8th Cir. April 26, 2004).

¶21.　Further examples of retaliatory suits occurred.  At the conclusion of a criminal trial, the trial court ordered that Dean and his wife be paid restitution.  Dean, along with his wife, brought an emotional distress claim against the presiding circuit court judge and the prosecutor, alleging the judge and prosecutor refused to release the restitution.  *Dean v. Carle*, No. 4:96CV00292FRB, slip op. at 1 (E.D. Mo. Apr. 22, 1996).  The attorney and judge were dismissed on the basis of immunity.  *Id*. at 2-3.  The trial court's Order noted:

> In addition to the legal shortcomings of this case, the Plaintiffs would have difficulty showing damages at trial since Mr. Parker has already tendered an offer to pay the restitution but the Plaintiffs have rejected that money. The Plaintiffs may wish to rethink their decision.

*Id*. at 4.  Also, after the Missouri Attorney General obtained a consent injunction against Dean and a charity he directed on the basis of deceptive practices, Dean sued two assistant attorneys general for the State of Missouri for damages and injunctive relief.  *Dean v. Thurman*, No. 87-0089C(6), slip op. at 1(E.D. Mo. Apr. 30. 1987).  Defendants moved for summary judgement on the ground of immunity.  *Id*.  The federal trial court dismissed the

---

[3]Dean sued under 42 U.S.C.S. § 1983, claiming that Missouri state officials violated his Fourth Amendment rights by trespassing onto his property and photographing his partially constructed home without a warrant.

case because the claim for damages was barred by prosecutorial immunity and the court did not find circumstances warranting its intervention in an ongoing state civil enforcement action. *Id.* at 2. Subsequently, Dean withdrew the complaint he had filed in state court.

¶22.  The Board cites *In the Matter of Admission to the Bar*, 828 N.E.2d 484, 494 (Mass. 2005) (conduct in previous litigation is properly considered to determine whether the applicant has a "sense of reality" in dealing with the legal system) and *In re Appeal of Lane*, 544 N.W.2d 367, 376 (Neb. 1996) (an applicant's threatening and irrational actions are relevant and may disclose a "pattern and way of life" regarding the applicant's normal reaction to opposition and disappointment) in support of the contention that consideration of such statements and actions when dealing with the legal system is proper, as they may be indicators of how the applicant will conduct himself as an attorney.

¶23.  The Committee stated in its recommendation that its concern was not "Dean's tendencies to picket or otherwise exercise any of his constitutional rights." The chairman of the Committee stated in the hearing that the Committee would not dispute Dean's right to file civil lawsuits. "It's the validity of the lawsuits that causes concern, not the right to file lawsuits." Dean has failed to show that by considering his litigation history, the Board's denial of his application was arbitrary, capricious, or malicious or that his First Amendment right to free speech was violated.

### III.  Whether the Board Violated Dean's Right to Due Process.

¶24.  Dean contends that the Board violated his right to due process in that it failed to afford him an opportunity to be confronted with, and to cross-examine witnesses who supplied

12

information adverse to him, since the Board never produced the witnesses whose statements it intended to use against him at the hearing. Dean cites *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 83 S. Ct. 1175, 10 L. Ed. 2d 224 (1963), in which the United States Supreme Court held that the admissions procedures failed to afford due process when no hearing was provided and the applicant was denied an opportunity to review the report of the character committee resulting in denial of his application. The Supreme Court considered "what procedural due process requires if the license [to practice law] is to be withheld." *Willner*, 373 U.S. at 103. The Court held that "petitioner was denied procedural due process when he was denied admission to the Bar by the Appellate Division without a hearing on the charges filed against him before either the Committee or the Appellate Division." *Id.* at 106. The requisite hearing should have included notice of what the government intended to present at the hearing and the opportunity for the charged person to be heard and to refute the government's arguments at the hearing. *Id.* at 105.

¶25. The Board responds that Dean was provided written notice prior to the hearing and an opportunity to answer and refute accusations at the hearing. The Board faxed Dean a letter on August 19, 2005, notifying Dean that both David Storlie from Illinois Mutual and Sara Writman from the Missouri Legal Ethics Counsel were potential witnesses for the August 25, 2005, hearing and listing the documents that might be introduced. Thus, the Board notes that Dean had an opportunity to address the evidence but failed to call any witnesses on his behalf.

¶26.    This case is distinguishable from *Willner.*  This Court finds the Board adequately informed Dean of the evidence of adverse character to be considered and sufficiently provided Dean with an opportunity to respond during the hearing.

¶27.    Dean further contends the burden was on the Board to produce the evidence to support the Board's finding.  However, Mississippi Code Annotated Section 73-3-2(2)(b) (Rev. 2004) provides:

> The applicant shall bear the burden of establishing his or her qualifications for admission to the satisfaction of the Board . . . .

Rule 8, §10;  *Watkins v. Miss. Bd. of Bar Admissions*, 659 So. 2d 561, 568 (Miss. 1995).  Without question, the burden is on Dean to demonstrate his fitness and not on the Board to show his lack thereof.  Therefore, this argument is without merit.

¶28.    Dean also contends that the Board relied heavily on hearsay in reaching its findings, and such reliance is in violation of Rule 8, section 5(d), which declares hearsay evidence "shall not be sufficient standing alone to support a finding unless it would be admissible over objection in civil actions."  Dean fails to state which testimony he believes was hearsay.  Moreover, as the trial court pointed out, Dean failed to make a specific objection to the hearsay he named either in the hearing before the committee or in chancery court.  This Court consistently has stated that failure to object to hearsay constitutes a waiver of the issue on appeal. *Moore v. Parker*, 962 So. 2d 558, 566 (Miss. 2007) (citing *Rubenstein v. State*, 941 So. 2d 735, 764 (Miss. 2006)).  We find that Dean's objection to such evidence is waived.

¶29. Dean failed to show by a preponderance of the evidence that denial of his application by the Board was arbitrary, capricious, or malicious or in violation of his due process rights.

### IV. Whether the Board Relied Solely on Conduct Too Remote In Time

¶30. Dean also asserts that the Board violated Rule 8, section 6, which states:

> The following conduct will not in and of itself be considered as indicating a lack of moral or ethical qualification:

. . . .

> 4. Misconduct remote in time unless felonious in nature or recently repeated in similar acts.

¶31. Dean argues the Board violated this rule by relying on allegations that Dean engaged in the unauthorized practice of law in 1987, twenty years ago. The Board acknowledges the rule and explains that it did not violate the rule. While the Board considered an act which occurred more than twenty years ago, it also considered additional conduct in making its determination. As mentioned, the Board based its denial on six reasons: (1) dishonesty; (2) irresponsibility in business or professional matters; (3) unauthorized practice of law; (4) violation of reasonable rules of conduct; (5) failure to exercise self-control; and (6) mental and emotional instability to the extent that the applicant is not suited for the practice of law. The unauthorized practice of law is only one of the six reasons. Therefore, the Board's inclusion of remote conduct among numerous other instances of disqualifying conduct in support of its decision does not violate Rule 8, section 6.

### V. Whether the Board Properly Determined Dean Was Mentally and Emotionally Unstable.

¶32.    Rule 8, section 6 allows disqualification for the determination that the applicant is "mentally or emotionally unstable to the extent that applicant is not suited for the practice of law." Dean asserts that the Board made a medical determination without having a medical license. However, the Bar Rules declare that "[i]t shall be the duty of the Board to administer these Rules and to determine the fitness and qualifications of persons seeking admission to practice law in the State of Mississippi." Bar Rules, Rule 2, §2. Since there is no requirement that the Board include a member with a medical degree, the Rules presuppose the Board is capable of evaluating an applicant's mental and emotional state, not for the purposes of medical diagnosis, but for the purpose of determining whether he or she is mentally and emotionally fit to practice law.

¶33.    The Board based its finding that Dean was emotionally and mentally unstable on the facts that:  (1) Dean wrote a number of threatening letters, including those to his former employer Illinois Mutual and to the dean of Thomas Cooley Law School;  (2) law school administration strongly urged that Dean undergo psychiatric examination; and (3) Dean paid members of the public to attend this committee hearing on August 25, 2005.

¶34.    This Court finds that Dean's repeated actions were sufficient for the Board, acting within its enumerated duties, to find that Dean "exhibited conduct substantially evidencing an inclination" that he was "emotionally and mentally unstable to the extent that [he] was not suited for the practice of law." Dean failed to show that the Board's denial with respect to the finding of his mental and emotional state was arbitrary, capricious or malicious.

**CONCLUSION**

16

¶35. The Board's denial of Dean's application was supported by substantial evidence. Further, Dean has shown no rule-based or constitutional violations committed during the Board's considerations. Therefore, this Court affirms the judgment of the Chancery Court of Hinds County which denied Dean's application for admission to the Mississippi Bar.

¶36. **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., NOT PARTICIPATING.**